UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
RAJKO LJUTICA,                                           :
                                                         :    Electronically Filed
                Plaintiff,                               :
                                                         :
                                                         :
        v.                                               :    07 Civ. 6129 (JSR)
                                                         :
                                                         :
ALBERTO R. GONZALES, U.S. Attorney                       :
General, MICHAEL CHERTOFF, Secretary,                    :
Department Homeland Security, EDUARDO                    :
AGUIRRE, Director, U.S. Citizenship and                  :
Immigration Services, ANDREA J.                          :
QUARANTILLO, Field Office Director, New                  :
York,                                                    :
                                                         :
                Defendants.                              :
-------------------------------------------------------- x


# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


                                MICHAEL J. GARCIA
                                United States Attorney for the
                                Southern District of New York
                                86 Chambers Street
                                New York, New York  10007
                                Tel. No.: (212) 637-2822


KRISTIN L. VASSALLO,
Assistant United States Attorney
        – Of Counsel –

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    Ljutica's Entry in the United States and Adjustment of Status to Lawful
            Permanent Resident. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.    The 1993 Conviction for Attempted Bank Fraud. . . . . . . . . . . . . . . . . . . . . . . . 4

     C.    Deportation Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.    The 2005 Naturalization Application.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     E.    The Instant Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS
     BECAUSE LJUTICA HAS BEEN CONVICTED OF AN AGGRAVATED FELONY
     AND IS STATUTORILY PRECLUDED FROM OBTAINING NATURALIZED
     CITIZENSHIP. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.    The Law Governing Naturalization Applications. . . . . . . . . . . . . . . . . . . . . . . . 9

           1.    The Naturalization Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           2.    Review of Naturalization Denials in Federal Court . . . . . . . . . . . . . . . 10

     B.    The Court Should Grant Summary Judgment to Defendants Because
            Ljutica's Conviction for an Aggravated Felony Precludes Him from
            Demonstrating the Good Moral Character Necessary to Obtain Citizenship. . . . 11

           1.    The "Good Moral Character" Requirement. . . . . . . . . . . . . . . . . . . . . . . 12

           2.    Ljutica Cannot Establish Good Moral Character Because He Has
               Been Convicted of an Aggravated Felony . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002)............................................. 10

Ashton v. Gonzales, 431 F.3d 95, 99 (2d Cir. 2005). ................................................... 11

Berenyi v. District Director, INS, 385 U.S. 630, 636-37 (1967). .................................. 11

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). ................................................... 12

Chan v. Gantner, 464 F.3d 289, 290-296 (2d Cir. 2006). ...................... 3, 9, 10, 12, 13, 14, 18, 19

Chang v. INS, 307 F.3d 1185, 1187, 1190-92 (9th Cir. 2002). ......................... 8, 16, 18

Conteh v. Gonzales, 461 F.3d 45, 59 (1st Cir. 2006) ................................................... 16

Fedorenko v. United States, 449 U.S. 490, 506 (1981). ............................................... 11

Fetamia v. Ridge, No. 3-03-CV-2841-BD, 2004 WL 1194458, at *3-4
    (N.D. Tex. May 27, 2004)........................................................................... 14, 15

Iysheh v. Ashcroft, 437 F.3d 613, 615 (7th Cir. 2006). ........................................ 15, 16

James v. Gonzales, 464 F.3d 505, 510-12 (5th Cir. 2006). ......................................... 16

Khalayleh v. INS, 287 F.3d 978, 979-80 (10th Cir. 2002). ......................................... 16

Langer v. McElroy, No. 00 Civ. 2741 (RWS), 2002 WL 31789757, at *2
    (S.D.N.Y. Dec. 13, 2002) ................................................................................... 9

In re Yao Quinn Lee, 480 F.2d 673, 676 (2d Cir. 1973)........................................ 11, 13

Li v. INS, No. 00 Civ 7868 (CBM), 2003 WL 102813, at *3 (S.D.N.Y. Jan. 10, 2003)............. 9

Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001)............................................. 16

Munroe v. Ashcroft, 353 F.3d 225, 226-27 (3d Cir. 2003)................................... 16, 18

In re Onyido, 22 I. & N. Dec. 552, 554 (BIA 1999). ................................................... 17

Peralta-Taveras v. Attorney General, 488 F.3d 580, 584 (2d Cir. 2007). .................. 19

Sharma v. Ashcroft, 57 Fed. Appx. 998, 1002 (3d Cir. 2003)................................... 15

Singh v. Gantner, No. 06 CV 607 (SLT) (SMG), _ F. Supp. 2d _, 2007 WL 2362251, at *3 (E.D.N.Y. Aug. 15, 2007). ............................................................................................... 11

Sui v. INS, 250 F.3d 105, 109, 115, 118-19 (2d Cir. 2001)............................................ 13, 14, 16

United States v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004). ............................................ 11

## FEDERAL STATUTES AND REGULATIONS

8 C.F.R. § 310.5(b) . ................................................................................................................ 10

8 C.F.R. § 316.2. ................................................................................................................... 7, 9

8 C.F.R. § 316.4. ...................................................................................................................... 9

8 C.F.R. § 316.10(b)(1)(ii). ............................................................................................. 6, 7, 13

8 C.F.R. § 316.14. .................................................................................................................. 10

8 C.F.R. § 334.1 ....................................................................................................................... 9

8 C.F.R. § 334.2. ...................................................................................................................... 9

8 C.F.R. § 335.1 ....................................................................................................................... 9

8 C.F.R. § 335.2. ................................................................................................................... 9, 10

8 C.F.R. § 335.3. .................................................................................................................... 10

8 C.F.R. § 336.1. .................................................................................................................... 10

8 C.F.R. § 336.2. .................................................................................................................... 10

8 C.F.R. § 336.. ...................................................................................................................... 10

5 U.S.C. § 706 ....................................................................................................................... 10

8 U.S.C. § 1101(43)(M)(i). ................................................................... 7, 8, 11 13, 15, 16, 17

8 U.S.C. § 1101(a)(43)(U). ................................................................................ 2, 13, 14, 17, 19

8 U.S.C. § 1101(f). .................................................................................................................. 12

8 U.S.C. § 1101(f)(8). ..................................................................................................... 7, 13, 19

8 U.S.C. § 1182(c) (1994)........................................................................................... 5

8 U.S.C. § 1410(c)..................................................................................................... 8

8 U.S.C. § 1421(a)..................................................................................................... 9

8 U.S.C. § 1421(c)..................................................................................................... 8, 10

8 U.S.C. § 1423(a)..................................................................................................... 10

8 U.S.C. § 1427(a)..................................................................................................... 6, 12, 19

8 U.S.C. § 1445(a)..................................................................................................... 9

8 U.S.C. § 1446(a)..................................................................................................... 9

8 U.S.C. § 1447(a)..................................................................................................... 7, 10

18 U.S.C. § 371.......................................................................................................... 4

18 U.S.C. § 1344........................................................................................................ 13

Defendants Alberto R. Gonzales, Attorney General, Michael Chertoff, Secretary of the Department of Homeland Security, Dr. Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services ("CIS"),[1] and Andrea J. Quarantillo, Field Office Director, New York, (collectively, "defendants"), by their counsel, Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Rajko Ljutica, a native and citizen of the former Yugoslavia, seeks review of an March 9, 2007 final decision of CIS denying his application to become a naturalized citizen of the United States. The CIS District Director denied Ljutica's naturalization application after concluding that he failed to demonstrate that he exhibited good moral character, as required by statute. The District Director based her conclusion on plaintiff's 1993 conviction in the United States District Court for the Southern District of New York for attempted bank fraud. Because Ljutica's conviction constituted an "aggravated felony," as that phrase is defined by the immigration laws, the District Director concluded that Ljutica was statutorily precluded from demonstrating the good moral character that is a prerequisite to naturalized citizenship.

---

[1] Eduardo Aguirre, originally named as a defendant in this lawsuit, is no longer the Director of CIS. Pursuant to Fed. R. Civ. P. 25(d), Dr. Emilio Gonzalez, the present Director, is automatically substituted for Mr. Aguirre as a defendant.

The Court should grant summary judgment to the Government. 8 U.S.C. § 1101(a)(43)(U) provides that an attempt to commit an aggravated felony set forth in 8 U.S.C. § 1101 (a)(43)(A)-(T) will itself qualify as an aggravated felony. In this case, Ljutica pled guilty to attempting to defraud a financial institution of more than $475,000, stipulating in his plea agreement that he and his co-defendant would have realized $475,025.25 had their scheme been successful. This offense qualified as an aggravated felony under subsection (U) because it was an attempt to commit fraud exceeding $10,000 – itself an aggravated felony under § 1101(a)(43)(M)(i). Because an attempt, by definition, involves an unsuccessful effort to commit a crime, Ljutica did not have to cause actual loss exceeding $10,000 for his conviction to qualify as an aggravated felony under subsection (U), only that he possess criminal intent and take a substantial step toward committing the crime – criteria that his offense easily met. Accordingly, this conviction constituted an aggravated felony, and Ljutica is barred by statute from demonstrating the good moral character necessary to obtain naturalization.

Furthermore, the fact that an Immigration Judge granted Ljutica's request for a discretionary waiver of deportation following his conviction does not undermine this conclusion; a grant of relief from deportation does not alter the fact of an alien's criminal conviction for immigration purposes, but only waives a charge of deportability based upon that conviction. For all of these reasons, the denial of Ljutica's application for naturalization should be upheld, and the complaint dismissed in all respects.

**STATEMENT OF THE CASE**

A.    **Ljutica's Entry in the United States and Adjustment of Status
to Lawful Permanent Resident**

Ljutica, a  native and citizen of Yugoslavia, entered the United States on October 30, 1987

under a visitor's visa issued by the United States Consulate in Belgrade.  See Application for

Permanent Residence, dated June 16, 1988, attached as Exhibit A to the Declaration of Kristin

Vassallo ("Vassallo Decl."), at 1; Order to Show Cause, dated January 31, 1995 ("Order to Show

Cause"), attached as Exhibit I to Vassallo Decl., at 1.  In June 1988, Ljutica married a United States

citizen, Jillian Nuttbrock, and thereafter applied to the former Immigration and Naturalization

Service ("INS")[2] for a discretionary adjustment of his immigration status to that of a lawful

permanent resident of the United States.  See Joint Petition to Remove Conditional Basis of Alien's

Permanent Resident Status, dated September 17, 1990, attached as Exhibit C to Vassallo Decl., at

1-2.  On November 9, 1988, INS granted Ljutica's application and conditionally adjusted his status

to that of a lawful permanent resident. See Memorandum of Creation of Record of Lawful Permanent

Residence, dated November 9, 1988, attached as Exhibit B to Vassallo Decl., at 1.  Thereafter, on

February 22, 1991, INS granted approved Ljutica's petition to remove the conditional basis of his

lawful permanent residence, deeming Ljutica a lawful permanent resident as of the date of his

original adjustment of status.  See Notice of Removal of Conditional Basis of Lawful Permanent

Residence, dated February 22, 1991, attached as Exhibit D to Vassallo Decl., at 1.

---

[2]    As of March 1, 2003, the INS ceased to exist as an independent agency within the United
States Department of Justice, and its functions respecting the adjudication of applications for
immigration benefits (such as the application for naturalizationat issue in this case) were assumed
by CIS in the United States Department of Homeland Security.  See Homeland Security Act of 2002,
Pub. L. 107-296, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); see also Chan v. Gantner, 464 F.3d
289, 290 (2d Cir. 2006).

**B.**    **The 1993 Conviction for Attempted Bank Fraud**

On December 23, 1991, a two-count indictment naming Ljutica as a criminal defendant was filed with this Court.  See Indictment, filed on December 23, 1991 ("Indictment"), attached as Exhibit F to Vassallo Decl., at 1-3.  The indictment charged Ljutica and Nuttbrock with attempted bank fraud and conspiracy, in violation of 18 U.S.C. § 371 and 18 U.S.C. §§ 1344 and 2.  See id. According to the indictment, Nuttbrock and Ljutica conspired and attempted to execute a scheme to obtain money under the custody of Security Pacific National Trust Company by means of false pretenses, and that, on April 20, 1990, Nuttbrock fraudulently initiated procedures to transfer approximately $475,025.25 from an account maintained at Security Pacific Bank by a client of her employer to an account Ljutica had opened at Manufacturers Hanover Trust Bank two days before. See id. ¶¶ 2-4.

On May 26, 1993, Ljutica entered a plea agreement with the Government to plead guilty to count two of the indictment, attempted bank fraud, in satisfaction of the charges against him.  See Plea Agreement, dated May 20, 1993, attached as Exhibit G to Vassallo Decl., at 1-4.  In the agreement, Ljutica stipulated that "an acceptable method of determining the 'loss' figure [under the federal Sentencing Guidelines] is $475,025.25, the amount the defendants would have realized had the scheme charged in Count Two been successful."  Id. at 2.

That same day, Ljutica entered a guilty plea to count two of the indictment, acknowledging:

On April 24, 1990, I went to Manufacture[r]s Hanover and attempted to withdraw $375,000 from an account which contained $475,000, money my wife had transferred into it.   I knew that this money had been fraudulently transferred to the account. This occurred in New York County.

4

Transcript of Plea, dated May 26, 1993 ("Plea Tr."), attached as Exhibit H to Vassallo Decl., at 12.[3]

The Government then provided a summary of its evidence against Ljutica and Nuttbrock:

> The government would, among other things, at trial . . . produce the documentary trail that includes the letters of authorization that directed an arm of Paine Webber to transfer approximately $475,000 in an account maintained by Paine Webber into an account that was opened several weeks earlier by Mr. Ljutica and, further, the first attempt failed, it was then attempted again – the first attempt failed, there was an attempt again on Monday. The money was wired into the account. We would produce a witness that would testify that Mr. Ljutica then attempted to withdraw some funds from that account, but was denied, and the money returned to Paine Webber.

Id. at 13. Ljutica affirmed that he did not dispute the Government's summary. See id.

On December 16, 1993, Ljutica was convicted upon his guilty plea, and sentenced by United States District Judge Shirley Wohl Kram to sixteen months in prison and two years of supervised release. See Judgment In a Criminal Case, dated December 16, 2003, attached as Exhibit E to Vassallo Decl., at 1-5.

**C.    Deportation Proceedings**

On February 2, 1995, the INS personally served Ljutica with an administrative Order to Show Cause charging him with deportability based on his 1993 conviction. See Order to Show Cause at 1a, 5. Specifically, INS charged Ljutica under then-section 241(a)(2)(A)(i) of the Immigration and Nationality Act (the "INA"), alleging that he had been convicted of a crime involving moral turpitude committed within five years of entry and sentenced to confinement for one year or longer. See id. at 3a. Thereafter, plaintiff applied for asylum, withholding of deportation, and waiver of deportation under then-section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994). See Order of the

---

[3]    Nuttbrock also pleaded guilty to attempted bank fraud. See Plea Tr. at 12-14. On February 4, 1994, Ljutica and Nuttbrock were divorced. See Application for Naturalization, dated March 14, 2005 ("N-400 Appl."), attached as Exhibit N to Vassallo Decl., at 5.

Immigration Judge, dated April 29, 1996 ("April 29, 1996 Order"), attached as Exhibit J to Vassallo Decl., at 1.  In an order dated April 29, 1996, an immigration judge denied his application for asylum and withholding of deportation, but granted him §212(c) relief, thus terminating deportation proceedings.  See id..

**D.    The 2005 Naturalization Application**

On March 28, 2005, Ljutica submitted an application ("naturalization application" or " N-400 application") to CIS to become a naturalized citizen of the United States, pursuant to INA §§ 310 and 316, 8 U.S.C. §§ 1421 & 1427.[4]  See N-400 Appl. at 1-10.  In his application, Ljutica stated that he had been convicted of bank fraud in New York, New York.  See id. at 8.  On September 22, 2005, CIS directed Ljutica to appear at its New York District offices on November 16, 2005 to be interviewed in connection with his naturalization application.  See Request for Applicant to Appear for Naturalization Initial Interview, dated September 22, 2005, attached as Exhibit O to Vassallo Decl., at 1.  On November 16, 2005, a CIS examiner interviewed Ljutica and administered the naturalization examination, which Ljutica passed.  See Naturalization Interview Results, dated November 16, 2005, attached as Exhibit P to Vassallo Decl., at 1.

On September 18, 2006, the District Director of CIS's New York District issued an initial decision denying Ljutica's naturalization application.  See Decision, dated September 18, 2006

---

[4]    This was Ljutica's second application for naturalization.  The first, filed in October 1998, was ultimately denied for the same reason as the application at issue in this case – namely, that his 1993 conviction constituted an aggravated felony and he was thus barred from establishing the good moral character required by 8 U.S.C. § 1427(a) and 8 C.F.R. § 316.10(b)(1)(ii).  See Application for Naturalization, dated October 20, 1998, attached as Exhibit K to Vassallo Decl., at 1-5; Decision, dated October 9, 2001, attached as Exhibit K to Vassallo Decl., at 1-3; Decision on Review of Denial of Naturalization Application, dated October 18, 2002, attached as Exhibit L to Vassallo Decl., at 1-2.

("September 18, 2006 Dec."), attached as Exhibit Q to Vassallo Decl., at 1-3. The District Director noted that an applicant for naturalization is required to demonstrate good moral character as a prerequisite to naturalized citizenship, and a person convicted of an aggravated felony cannot meet this requirement. See id. at 2 (citing 8 C.F.R. §§ 316.2(7), 316.10(b)(1)(ii) and 8 U.S.C. § 1101(f)(8)). The District Director concluded that Ljutica's 1993 conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), and he was thus "precluded from ever establishing good moral character for naturalization purposes." Id. at 3. In her decision, the District Director informed Ljutica that he had the right to administratively appeal the decision by requesting a hearing before the District Director, pursuant to INA § 336(a), 8 U.S.C. § 1447(a) (an "N-336 hearing"). See id. at 1.

On October 16, 2006, Ljutica filed a timely administrative appeal of CIS's decision by requesting an N-336 hearing.[5] See Request for a Hearing on a Decision in Naturalization Proceedings, dated October 11, 2006 ("Brief on Appeal"), attached as Exhibit R to Vassallo Decl., at 1. In his appeal, Ljutica claimed that his conviction did not constitute an aggravated felony because it did not result in the loss of any funds from Paine Webber account, as required by 8 U.S.C. § 1101(a)(43)(M)(i). See Brief on Appeal, at 6-8. Ljutica further argued that he established good moral character because his conviction occurred more than five years before he filed his naturalization application. See id. at 2-3. Finally, Ljutica claimed that CIS was estopped from arguing that he lacked good moral character in light of the IJ's decision granting him a § 212(c) waiver of deportation. See id. at 4-5.

---

[5] Although the September 18, 2006 decision and the October 16, 2006 decision state that Ljutica was convicted on December 17, 1993, the Judgment of Conviction states that sentence was imposed on December 16, 1993. See Judgment In a Criminal Case, at 1-5.

On March 9, 2007, the District Director issued a final decision confirming the initial denial of Ljutica's naturalization application.  See Decision, dated March 9, 2007 ("March 9, 2007 Dec."), attached as Exhibit S to Vassallo Decl., at 1-2.  Noting that Ljutica and his former spouse had "attempt[ed] to wire transfer over \$470,000.00 from accounts at Paine Webber," the District Director again found that Ljutica's conviction constituted an aggravated felony under 8 U.S.C. § 1101(43)(M)(i).  See id. The District Director also rejected  Ljutica's argument that the § 212(c) waiver established his good moral character, finding that this relief "only prevent[ed him] from being deported" and did not preclude CIS from considering his crime as it determined whether he had demonstrated good moral character.  Id. at 2.  The District Director's decision  informed Ljutica of his right to seek judicial review in federal district court pursuant to INA § 310(c), 8 U.S.C. § 1410(c).  See id. at 2.

## E.    The Instant Complaint

On June 29, 2007, Ljutica filed the instant suit, seeking "de novo review and a hearing on his application for naturalization pursuant to 8 U.S.C. 1421(c)."  See Complaint Seeking De Novo Hearing and Declaratory Relief, dated June 21, 2007, at 1.  Ljutica alleges that he is eligible for naturalization because his conviction "does not satisfy the two pronged test established in Steve Kie Chang v. Immigration & Naturalization Service, 307 F.3d 1185 (9th Circuit Court of Appeals 2002)," and thus does not qualify as an aggravated felony.  Id. ¶ 18.

## ARGUMENT

## THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS BECAUSE LJUTICA HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS STATUTORILY PRECLUDED FROM OBTAINING NATURALIZED CITIZENSHIP

A.    **The Law Governing Naturalization Applications**

    1.    **The Naturalization Process**

Congress is given power by the Constitution "to establish a[] uniform Rule of Naturalization." Const., Art. I, § 8, cl. 4. In 1990, Congress removed naturalization from the courts and vested the Attorney General with "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a) (as amended by the Immigration Act of 1990, Pub. L. No. 101-649, Title IV, 104 Stat. 4978, 5038-48 (Nov. 29, 1990) ("ImmAct 90")); Chan v. Gantner, 464 F.3d 289, 290 (2d Cir. 2006).

Under federal regulations, the administrative naturalization process is generally divided into five stages. See, e.g., Li v. INS, No. 00 Civ. 7868 (CBM), 2003 WL 102813, at *3 (S.D.N.Y. Jan. 10, 2003) (discussing administrative naturalization process); Langer v. McElroy, No. 00 Civ. 2741 (RWS), 2002 WL 31789757, at *2 (S.D.N.Y. Dec. 13, 2002) (same). First, the applicant must submit completed application materials to CIS, which must contain, inter alia, a complete and accurate Form N-400 application, a set of fingerprints, criminal background information, and information reflecting his satisfaction of the statutory eligibility requirements. See generally 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1, & 334.2. The next stage consists of an investigation of the applicant's background, including a fingerprint check by the FBI. See 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1 & 335.2(b). At the third stage, the applicant undergoes testing with respect to the statutory requirements that he demonstrate proficiency in

9

English and a knowledge of the history and government of the United States.  See 8 U.S.C.

§ 1423(a); 8 C.F.R. Pt. 312.  Next, the applicant is examined under oath by a CIS naturalization

officer who will, except in limited cases, either approve or deny the application within 120 days

of the interview.  See 8 C.F.R. §§ 316.14 & 335.2-335.3.  Should CIS deny the naturalization

application, the applicant may file an administrative appeal, in the form of a request for a hearing

on the denial before a senior naturalization officer, pursuant to INA § 336(a), 8 U.S.C. § 1447(a).

See 8 C.F.R. §§ 336.1-336.2.

### 2.    Review of Naturalization Denials in Federal Court

If CIS denies a naturalization application, and that denial has been confirmed after review

by a senior naturalization officer pursuant to INA § 336(a), the applicant may seek judicial

review in the United States district court for the district in which he resides, pursuant to INA

§ 310(c), 8 U.S.C. § 1421(c); see also 8 C.F.R. §§ 310.5(b) & 336.9.  Under INA § 310(c), a

district court's review of a denial of naturalization is made "in accordance with chapter 7 of Title

5," i.e., the Administrative Procedure Act ("APA").  8 U.S.C. § 1421(c).  However, in contrast to

the generally limited review provided by the APA, see 5 U.S.C. § 706,  INA § 310(c) provides

that review of a naturalization denial "shall be de novo, and the Court shall make its own

findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a

hearing de novo on the application."  8 U.S.C. § 1421(c); see also Chan, 464 F.3d at 291

(characterizing § 310(c)'s grant of authority to district court as "unusual in its scope") (citation

omitted).  Accordingly, judicial review of a naturalization denial "is not limited to any

administrative record but rather may be on facts established in and found by the district court."

Id. (quoting Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002)); see also id. ("[E]ven if the

INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions") (quoting <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1162 (9th Cir. 2004)).

An applicant seeking such review bears the burden of establishing that he is entitled to naturalization.  <u>See</u> <u>Berenyi v. District Director, INS</u>, 385 U.S. 630, 636-37 (1967).  As part of this showing, an applicant must demonstrate that he meets each statutory requirement for becoming a naturalized citizen.  <u>See id.</u> ("it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect"); <u>In re Yao Quinn Lee</u>, 480 F.2d 673, 676 (2d Cir. 1973) ("It is well settled that in a naturalization proceeding the petitioner has the burden of proving his good moral character"); <u>Singh v. Gantner</u>, No. 06 CV 607 (SLT) (SMG), _ F. Supp. 2d _, 2007 WL 2362251, at *3 (E.D.N.Y. Aug. 15, 2007) ("An applicant for naturalization bears the burden of proving that he or she satisfies all the statutory requirements for citizenship").  Furthermore, the Supreme Court has held that "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." <u>Fedorenko v. United States</u>, 449 U.S. 490, 506 (1981).  Therefore, any doubts regarding the grant or denial of a naturalization application "should be resolved in favor of the United States and against the claimant."  <u>Berenyi</u>, 385 U.S. at 637 (citation omitted); <u>Ashton v. Gonzales</u>, 431 F.3d 95, 99 (2d Cir. 2005).

**B.**    **The Court Should Grant Summary Judgment to Defendants**
**Because Ljutica's Conviction for an Aggravated Felony Precludes Him from**
**Demonstrating the Good Moral Character Necessary to Obtain Citizenship**

The Court should grant summary judgment to defendants because there are no facts in dispute.  As a matter of law, Ljutica's 1993 conviction constitutes an aggravated felony under 8

U.S.C. §§ 1101(a)(43)(M)(i) and 1101(a)(43)(U).  Because this conviction precludes Ljutica

from demonstrating good moral character, his naturalization application was properly denied.

Summary judgment should be granted when "there is no genuine issue as to any material

fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has instructed that the summary judgment procedure "is properly regarded

not as a disfavored procedural shortcut but, rather, as an integral part of the Federal Rules."

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  These principles are no less applicable when

a disappointed naturalization applicant seeks de novo review of an unsuccessful naturalization

application pursuant to INA § 310(c).  See Chan, 464 F.3d at 295-96.  Thus, summary judgment

is appropriate when there is no genuine issue of material fact regarding a statutory bar to

naturalization, such as when an applicant has been convicted of an aggravated felony.  See id. at

296.

### 1.    The "Good Moral Character" Requirement

The general requirements for naturalization are set forth in 8 U.S.C. § 1427(c).  Pursuant

to that statute, no person may become a United States citizen unless he satisfies each of the

following:

> (1) immediately preceding the date of filing his application for naturalization has resided
> continuously, after being lawfully admitted for permanent residence, within the United
> States for at least five years, . . . and has been physically present therein for periods
> totaling at least half of that time, . . . (2) has resided continuously within the United States
> from the date of the application up to the time of admission to citizenship, and . . . (3)
> during all the periods referred to has been and still is a person of good moral character[.]

8 U.S.C. § 1427(a)(1)-(3) (emphasis added).

To assist in assessing whether a naturalization applicant has displayed good moral

character, the INA sets forth a nonexclusive list of factors that preclude such a finding.  See 8

U.S.C. § 1101(f). Of particular relevance here, 8 U.S.C. § 1101(f)(8) bars an individual who "at any time has been convicted of an aggravated felony" from establishing the good moral character necessary to obtain citizenship. See Chan, 464 F.3d at 292; 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . [c]onvicted of an aggravated felony . . . on or after November 29, 1990").

As used in § 1101(f)(8), the term "aggravated felony" refers to the offenses listed in 8 U.S.C. § 1101(a)(43). See 8 U.S.C. § 1101(f)(8). Among the crimes which qualify as an aggravated felony under this provision are "offense[s] that [] involve[] fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i); see Sui v. INS, 250 F.3d 105, 109 n.3 (2d Cir. 2001). "Additionally, section 1101(a)(43) provides that attempts and conspiracies to commit offenses constitute aggravated felonies if the underlying substantive offense is included within the statutory definition." Chan, 464 F.3d at 293 (citing 8 U.S.C. § 1101(a)(43)(U)).

## 2.    Ljutica Cannot Establish Good Moral Character Because He Has Been Convicted of an Aggravated Felony

In this case, plaintiff has failed to meet his burden of establishing good moral character. See Lee, 480 F.2d at 676. Plaintiff does not dispute that he was convicted of attempted bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. Rather, he apparently argues that his conviction does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) because it did not result in an actual loss greater than $10,000. See Brief on Appeal, at 5-9. This claim is meritless, and should be denied.[6]

--------------------------------------------------

[6]    Ljutica also argued at the administrative level that CIS incorrectly referred to his conviction as bank fraud, rather than attempted bank fraud. See Brief on Appeal, at 9. While it is true that CIS

Despite Ljutica's contentions, his 1993 conviction precludes him from demonstrating good moral character because it was an attempt to commit the aggravated felony of bank fraud. Section 1101(a)(43)(U) specifically provides that an "attempt . . . to commit an offense described in this paragraph" will constitute an aggravated felony. See 8 U.S.C. § 1101(a)(43)(U); Chan, 464 F.3d at 293; Sui, 250 F.3d at 109 n.3. To qualify as an "attempt" under this subsection, the offense must include both "criminal intent and the completion of a substantial step toward committing the crime." Sui, 250 F.3d at 115. Thus, to qualify as an aggravated felony under subsection (U), a conviction must meet two criteria: (1) it must satisfy the elements of an "attempt" set forth in Sui; and (2) the underlying crime (i.e., the completed offense) must be an aggravated felony, as defined by § 1101(a)(43). See id. at 118-19 (examining, under § 1101(a)(43)(U), whether conviction included the requisite intent and encompassed a "substantial step" to commit an aggravated felony, namely, a fraud involving loss of more than $10,000); Fetamia v. Ridge, No. 3-03-CV-2841-BD, 2004 WL 1194458, at *3-4 (N.D. Tex. May 27, 2004) (same).

Here, Ljutica's conviction clearly met these requirements. Ljutica and his co-defendant, Jillian Nuttbrock, pled guilty to

> unlawfully, willfully, and knowingly . . . attempt[ing] to execute a scheme and artifice to obtain money, funds, credits, assets, securities and other property under the custody of a financial institution, namely, Security Pacific National Trust Company, . . . by means of false and fraudulent pretenses, representations, and promises, namely, by . . . NUTTBROCK initiating a fraudulent wire transfer directing the Bank to transfer approximately $475,025.25 from an account not owned by the defendants

characterized the offense as bank fraud and did not mention 8 U.S.C. § 1101(a)(43)(U) in its analysis, this has no bearing on the correctness of the denial. In the final decision, the District Director stated that Ljutica and his former spouse "attempt[ed] to wire transfer over $470,000 from accounts at Paine Webber," thus recognizing the circumstances of Ljutica's conviction. See March 9, 2007 Dec. at 2. In any event, even under de novo review, the denial was entirely proper, because Ljutica's conviction still qualifies as an aggravated felony. See infra at 14-19.

into an account maintained and controlled by . . . LJUTICA[] at another financial institution.

Indictment, at 2-3. This offense encompassed both the requisite intent – the intent to commit the fraud – as well as substantial steps taken toward committing the crime, namely, the initiation of a fraudulent wire transfer directing Security Pacific National Trust Company to move funds into an account Ljutica maintained and controlled at another financial institution. Given these circumstances, Ljutica's conviction qualifies as an "attempt" under § 1101(a)(43)(U). See Fetamia, 2004 WL 1194458, at *4 (conviction properly classified as aggravated felony where alien possessed "requisite criminal intent and took substantial steps toward the commission" of an aggravated felony).

Furthermore, the crime that Ljutica attempted to commit qualifies as an aggravated felony under § 1101(a)(43)(M)(i). There is no question that bank fraud "is an offense[s] that [] involve[] fraud." See Iysheh v. Ashcroft, 437 F.3d 613, 615 (7th Cir. 2006); Sharma v. Ashcroft, 57 Fed. Appx. 998, 1002 (3d Cir. 2003).[7] Rather, the only issue is whether the offense that Ljutica attempted to commit satisfies the second prong of the inquiry: i.e., that it resulted in a loss of more than $10,000 to the victim or victims. Looking to the terms of Ljutica's indictment and plea agreement, his conviction easily meets this standard.

As noted above, the count to which Ljutica pled guilty charged him with attempting to defraud Security Pacific National Trust Bank of $475,025.25.[8] See Indictment, at 2-3. Ljutica

---

[7]    The Third Circuit Court of Appeals does not prohibit citations to unpublished decisions issued prior to January 1, 2007. See 3d Circuit R. Appx. 5.7.

[8]    Ljutica does not appear to contest that this Court may look to the record of conviction – that is, the indictment, the plea agreement, the plea transcript, and the judgment of conviction – to determine whether the underlying offense satisfied the "loss" component of 8 U.S.C. § 1101(a)(43)(M)(i). See Compl. ¶ 13; Brief on Appeal, at 6-7. Nor could he. Although the Second

himself confirmed the scope of the fraud in both his plea and his plea agreement. In entering his plea, Ljutica acknowledged that he "went to Manufacture[r]s Hanover and attempted to withdraw $375,000 from an account which contained $475,000, money my wife had transferred into it [and] that [he] knew . . . had been fraudulently transferred to the account." Plea Tr. at 12. Moreover, Ljutica stipulated in his plea agreement that "an acceptable method of determining the 'loss' figure [under the federal Sentencing Guidelines] is $475,025.25, the amount the defendants would have realized had the scheme charged in Count Two been successful." Plea Agreement, at 2. Ljutica's admissions thus unquestionably demonstrate that the fraud he attempted to commit involved a loss of more than $10,000.

Citing Chang v. INS, 307 F.3d 1185 (9th Cir. 2002) and Munroe v. Ashcroft, 353 F.3d 225 (3d Cir. 2004), Ljutica argues that, in order to qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), a conviction must cause a loss to victims that exceeds $10,000. See Compl. ¶ 18;

---

Circuit has not yet explicitly ruled on the question (a case presenting the issue, Elkaslasi v. Gonzales, No. 06-0845-ag, was heard by Circuit panel on June 6, 2007, and is presently sub judice), it relied on such documents in Sui when it concluded that the victim of Sui's fraud did not lose more than $10,000. See Sui, 250 F.3d at 119 (finding that conviction did not qualify under 1101(a)(43)(M)(i), because amount of loss, which was set forth in alien's restitution order, did not exceed $10,000).

Moreover, the appellate courts to consider the matter have permitted reference to these documents to determine whether the loss involved exceeded $10,000. See, e.g., Conteh v. Gonzales, 461 F.3d 45, 59 (1st Cir. 2006) (BIA properly considered indictment and restitution order to determine that loss exceeded $10,000); Munroe v. Ashcroft, 353 F.3d 225, 226-27 (3d Cir. 2003) (BIA permitted to consider indictment and criminal judgment to determine that loss exceeded $10,000); James v. Gonzales, 464 F.3d 505, 510-12 (5th Cir. 2006) (BIA permitted to consider indictment, pre-sentence report, and judgment of conviction to determine that loss exceeded $10,000); Iysheh, 437 F.3d at 615 (7th Circuit) (IJ and BIA permitted to consider plea agreement to determine that loss exceeded $10,000); Chang, 307 F.3d at 1190-91 (plea agreement demonstrated that amount of loss did not exceed $10,000); Khalayleh v. INS, 287 F.3d 978, 979-980 (10th Cir. 2002) (IJ and BIA properly relied upon plea agreement to determine that loss exceeded $10,000); Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001) (plea agreement and criminal judgment demonstrated that loss exceeded $10,000).

Brief on Appeal, at 4-8. He further reasons that his conviction – an attempt to commit bank fraud – did not result in any monetary loss. See id. Therefore, Ljutica contends, his 1993 conviction does not constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), and he is not barred from establishing good moral character. See id.

Ljutica's contentions should be rejected. Ljutica fails to recognize that 8 U.S.C. § 1101(a)(43)(U) specifically contemplates that an attempt to commit an aggravated felony – including a fraud offense under subsection (a)(43)(M)(i) – will itself constitute an aggravated felony. Because an attempt, by definition, "involves an unsuccessful effort to commit a crime," In re Onyido, 22 I. & N. Dec. 552, 554 (BIA 1999), Ljutica did not have to cause actual loss exceeding $10,000 for his conviction to qualify as an aggravated felony under subsection (U) – rather, he only needed to attempt to do so. See Fetamia, 2004 WL 1194458, at *4 (actual loss not required for attempted fraud to constitute aggravated felony under §§ 1101(a)(43)(M)(i) and (U)); Onyido, 22 I. & N. Dec. at 554 (same). Here, as explained above, Ljutica's conviction satisfied the elements of an attempt to fraudulently obtain more than $10,000. Therefore, the fact that no actual loss was sustained does not prevent his conviction from qualifying as an aggravated felony. See Fetamia, 2004 WL 1194458, at *4 (in case where alien pled guilty to making false statement with intent to obtain $400,000 loan, the fact that bank suffered no pecuniary loss was of "no consequence"; "It is sufficient that petitioner possessed the requisite criminal intent and took substantial steps toward the commission of an offense involving fraud or deceit which, if successful, would have resulted in a loss . . . in excess of $10,000"); Onyido, 22 I. & N. Decl at 554 (where alien's actions supported a conviction for attempt to defraud $15,000 from insurance company, conviction constituted aggravated felony under 8 U.S.C. § 1101(a)(43)(U), even though alien failed to obtain money).

17

In arguing that his conviction lacks the requisite "loss," Ljutica cites <u>Chang</u>, 307 F.3d at 1185, and <u>Munroe</u>, 353 F.3d at 225, but these cases are inapposite.  In <u>Chang</u>, the alien pled guilty to one count of bank fraud, and stipulated in his plea agreement that the count to which he was pleading guilty involved a loss of $605.30.  <u>Chang</u>, 307 F.3d at 1187.  Thus, the court held that the conviction did not qualify as an aggravated felony under § 1101(a)(43)(M)(i), which only applies to fraud offenses exceeding $10,000 in loss.  <u>See id.</u> at 1190-92.  The <u>Chang</u> court did not address the situation present here - a conviction for attempted fraud - or otherwise consider § 1182(a)(43)(U).  This crucial distinction precludes Ljutica from relying on this decision as support for his claim.

Nor may Ljutica rely on the Third Circuit's decision in <u>Munroe</u>.  There, the alien pled guilty to two counts of bank fraud, which collectively involved more than $11,000 in loss.  <u>See Munroe</u>, 353 F.3d at 226-27.  Although the trial court eventually reduced the alien's restitution order to $9,999 in an attempt to alter the effect of the conviction for immigration purposes, the Third Circuit found that the conviction involved a loss greater than $10,000, and therefore qualified as a aggravated felony.  <u>See id.</u> at 227.  <u>Munroe</u> did not involve § 1101(a)(43)(U), and in fact undercuts Ljutica's position – looking to the judgment of conviction here as the court did in that case, it is clear that Ljutica pled guilty to attempting to defraud a bank of well more than $10,000.

Finally, to the extent Ljutica argues that he can establish good moral character because an IJ granted him relief from deportation under INA § 212(c), <u>see</u> Brief on Appeal, at 4-5; April 29, 1996 Order, at 1; such a claim is squarely foreclosed by the Second Circuit's decision in <u>Chan v. Gantner</u>.  <u>See Chan</u>, 464 F.3d at 295.  In <u>Chan</u>, the Court of Appeals considered, and rejected, a claim identical to that advanced by Ljutica, holding that "a waiver under section 212(c) does not preclude the INS or the courts from relying on the underlying offense to bar" naturalization.  <u>Id.</u> at

18

295; see also Peralta-Taveras v. Attorney Gen., 488 F.3d 580, 584 (2d Cir. 2007) ("The granting of a § 212(c) waiver does not expunge the underlying offense or its categorization as an aggravated felony").  Given this controlling precedent, Ljutica's reliance on his § 212(c) relief is simply unavailing.  His application for naturalization was therefore properly denied.

In sum, because 8 U.S.C. § 1101(a)(43)(U) expressly incorporates an attempt to commit an offense in the definition of "aggravated felony," Ljutica's conviction for attempted bank fraud constitutes an aggravated felony, and Ljutica is therefore unable to demonstrate the good moral character necessary to obtain naturalized citizenship.  See 8 U.S.C. §§ 1101(f)(8); 8 U.S.C. § 1427(a); Chan, 464 F.3d at 294.  Accordingly, Ljutica's application for naturalization was properly denied.  The Court should thus grant summary judgment to defendants and dismiss Ljutica's complaint in all respects.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request that the Court grant their motion for summary judgment in its entirety and dismiss plaintiff's complaint.

Dated:  New York, New York
      September 17, 2007

                  MICHAEL J. GARCIA
                  United States Attorney for the
                  Southern District of New York
                  Attorney for Defendants

          By:     _/s/ Kristin L. Vassallo_____
                  KRISTIN L. VASSALLO
                  Assistant United States Attorney
                  Tel. No.: (212) 637-2822
                  Fax No.: (212) 637-2730