DROBENKO & ASSOCIATES, P.C.
Attorney for the Plaintiff
By: Walter Drobenko, Esq.
25-84 Steinway Street
Astoria, New York 11103
Tel: (718) 721-2000
Fax:(718) 721-8812

------------------------------------x

Rajko Ljutica

       Plaintiff,

      v.

Alberto R. Gonzales,
U.S. Attorney General
Michael Chertoff,
Secretary, Department of Homeland Security
Eduardo Aguirre
Director, U.S. Citizenship &Immigration Services
Andrea J. Quarantillo
Field Office Director, New York, USCIS

       Defendants.

------------------------------------x

Electronically Filed

**NOTICE OF MOTION**
07 CV. 6129 (JSR)

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and the Declaration of Walter Drobenko, and the exhibits annexed thereto, Plaintiff RAJKO LJUTICA by his attorney, Walter Drobenko, Drobenko & Associates, P.C., will move this Court before the Honorable Jed S. Rakoff, United States District Judge, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, for an order Granting Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

PLEASE TAKE FURTHER NOTICE that, pursuant to the briefing schedule set forth by

Judge Rakoff, defendant's opposition papers, if any, are to be filed and served on or before

October 1, 2007, plaintiff's reply papers, if any, are to be filed and served on or before October 8,

2007, and oral argument will be heard before Judge Rakoff on October 15, 2007, at 4:00 p.m.

Dated: Astoria, New York
       September 17, 2007

Respectfully Submitted,

By:      /s/ Walter Drobenko
         Walter Drobenko, Esq.
         Attorney for Plaintiff
         Drobenko & Associates, P.C.
         25-84 Steinway Street
         Astoria, N.Y. 11103
         Tel: (718) 721-2000
         Fax:(718) 721-8812

To:   Michael J. Garcia
      United States Attorney for the
      Southern District of New York
      Attorney for Defendants
      KRISTIN L. VASSALLO
      Assistant United States Attorney
      86 Chambers Street
      New York, New York 10007

# UNITED STATES DISTRICT COURT

**District of** New York

Southern

Rajko Ljutica,

Plaintiff

**v.**

Alberto R. Gonzales,
U.S. Attorney General
Michael Chertoff,
Secretary, Department of Homeland Security
Eduardo Aguirre
Director, U.S. Citizenship &Immigration Services
Andrea J. Qurantillo
Field Office Director, New York, USCIS

Respondents

**MOTION FOR SUMMARY
JUDGEMENT**

**CASE NUMBER**

**07 CV. 6129**

## RELIEF SOUGHT

Rajko Ljutica, Plaintiff, moves this court for summary judgment against Alberto R. Gonzales,

U.S. Attorney General, Michael Chertoff, Secretary Department of Homeland Security, Eduardo

Aguirre, Director, U.S. Citizenship & Immigration Services, Andrea J. Qurantillo, Field Office

Director, NYC Field Office, Respondent(s), and prays that this court render a judgment for the

Plaintiff for all of the relief set forth in his Petition: a finding that Plaintiff was not convicted of

an aggravated felony;  is a person of good moral character and a grant of naturalization. .

## GROUNDS FOR RELIEF

1.   Mr. Ljutica is entitled to summary judgment because, as evidenced by the attached

     Exhibit A through H, and the prior pleadings, there is no genuine issue of material fact

-Page 1-

that needs to be tried in this action.

2.  This is a request for *de novo* review of a United States Citizenship & Immigration Services ("USCIS") denial of Mr. Ljutica's application for naturalization. (Petition for Review of Denial of Naturalization.

3.  This Court has jurisdiction pursuant to section 310(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1421(c), which provides for *de novo* review of an administrative denial of naturalization.

**UNDISPUTED FACTS**

4.  On or about April 26, 1990, Mr, Ljutica was arrested for Bank Fraud of which he pleaded guilty to on December 16, 1993 (18 USC 1344 & 2). He was sentenced to a term of imprisonment of 16 months and he was required to pay an assessment fee of $50.00.

5.  On April 30, 1991, Mr. Ljutica was arrested for Grand Theft of a Vehicle in the 3rd degree. This case was never prosecuted

6.  On April 29, 1996, Immigration Judge Matthew Adrian granted Mr. Ljutica permanent residency and granted a 212(c) waiver.

7.  On or about January 13, 2000, Mr. Ljutica filed and had a preliminary interview on his application for naturalization.

8.  On or about October 8, 2001, the INS Adjudications Officer denied the Plaintiff's naturalization application.

9.  On October 18, 2002 the INS denied the appeal of his naturalization petition.

10. On March 14, 2005, Plaintiff filed a new naturalization application with the United States

Citizenship & Immigration Services (USCIS).

11. On May 6, 2005, the Plaintiff completed all biometric requirements for his naturalization.

12. On November 16, 2005, the Plaintiff was advised by USCIS District Adjudications Officer Wengenroth, that he passed the required English, U.S. History and Government parts to his naturalization application.

13. On September 18, 2006, District Director Mary Ann Gantner, issued a denial decision on the naturalization petition.

14. On October 16, 2006, the Plaintiff through his attorney appealed the decision of the District Director.

15. On February 8, 2007, the Plaintiff appeared with counsel for his appeal on the denial of his naturalization petition before a GS-12 New York City District Adjudications Officer.

16. On March 9, 2007, USCIS Field Office Direct Andrea J. Qurantillo issued a decision denying the petition based upon the Plaintiff was a alleged aggravated felon.

17. On June 29, 2007, the Plaintiff filed a Summons and Complaint with the United States District Court for the Southern District of New York for *de novo* review of the Plaintiffs naturalization application.

## PROCEDURAL HISTORY

18. Plaintiff commenced this action on June 29, 2007. Attached hereto as Exhibit "A" is a copy of the complaint.

19. Mr. Ljutica currently has a two U.S. citizen children and is gainfully employed in the transportation industry as a chauffeur.

Page -3-

20. On or about April 26, 1990, Mr. Ljutica was arrested for Bank Fraud and he pleaded guilty on December 16, 1993 18 USC 1344 & 2. He was sentenced to a term of imprisonment of 16 months and he was required to pay an assessment fee of $50.00. See Exhibit "D" annexed hereto as part of Exhibit "F".

21. On April 30, 1991, Mr. Ljutica was arrested for Grand Theft of a Vehicle in the 3rd degree. This case was never prosecuted See Exhibit "E" annexed hereto as part of Exhibit "F".

22. On April 29, 1996, Immigration Judge Matthew Adrian granted Mr. Ljutica permanent residency. The Immigration Judge reviewed Mr. Ljutica's criminal record and found that it did not preclude him from adjustment of status to permanent resident. See Exhibit "B" annexed hereto as part of Exhibit "F".

23. On or about January 13, 2000, Mr. Ljutica filed and had a preliminary interview on his application for naturalization.

24. On or about October 8, 2001, the INS Adjudications Officer denied the Plaintiff's naturalization application. The INS found that the Plaintiff's arrest and subsequent conviction for Bank Fraud on December 16, 1993 were considered statutorily barring for the Plaintiff from demonstrating "good moral character" which is necessary for naturalization.

25. The Adjudications Officer also incorrectly stated that the Plaintiff was arrested four times when in fact, he was arrested twice and convicted once.

26. The Adjudication Officer's denial in no way indicated that Mr. Ljutica's conviction was in fact an aggravated felony.

Page -4-

27. The INS gave no other reason for its denial other than finding that Mr. Ljutica lacked good moral character.

28. Mr. Ljutica appealed the denial of his naturalization, but on October 18, 2002, the INS upheld the denial but this time for an entire different reason. The Adjudication Officer stated that it was determined that Mr. Ljutica had been convicted of Bank Fraud which is an aggravated felony.

29. The denial letter also indicates that Immigration and Nationality Act (INA) Section 101(a)(43)(M)(I) states that an "aggravated felony" means an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.

30. On March 14, 2005, Plaintiff filed a new naturalization application with the United States Citizenship & Immigration Services (USCIS). Attached hereto as Exhibit "B"

31. On May 6, 2005, the Plaintiff completed all biometric requirements for his naturalization, attached hereto as Exhibit "C"

32. On November 16, 2005, the Plaintiff was advised by USCIS District Adjudications Officer Wengenroth, that he passed the required English, U.S. History and Government parts to his naturalization application, attached hereto as Exhibit "D".

33. On September 18, 2006, District Director Mary Ann Gantner, issued a denial decision again finding that the Plaintiff was of poor moral character and an aggravated felony, attached hereto as Exhibit "E".

34. On October 16, 2006, the Plaintiff through his attorney appealed the decision of the District Director, attached hereto as Exhibit "F".

35. On February 8, 2007, the Plaintiff appeared with counsel for his appeal on the denial of

his naturalization petition before a GS-12 New York City District Adjudications Officer, attached hereto as Exhibit "G".

36.    On March 9, 2007, USCIS Field Office Direct Andrea J. Quarantillo issued a decision finding that the Plaintiff lacked good moral character and was convicted of an aggravated felony under INA 101(a)(43)(M)(I). Attached hereto as Exhibit "H".

## Plaintiff's CONVICTION

37.    The statutory definition of "aggravated felony" in INA 101(a)(43)(M)(I) is, (M) an offense that; (I) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00. This section has a two prong test.

38.    The Plaintiff's conviction for Bank Fraud has no element of loss to the victim or victims of $10,000 or more.

39.    There is no loss to the victim and a court fee in the amount of $90.00 which the court could look to; to demonstrate a loss and as such this crucial element in absent thus this conviction cannot be deemed an aggravated felony.

40.    INA 1101(a)(43)(M)(I) provides that only a fraudulent offense resulting in more than a $10,000.00 loss to the victim qualifies as an aggravated felony.

41.    The Ninth Circuit Court of Appeals established that there must be a loss to the victim of $10,000 and that the two prong test must be satisfied. *"The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. 1101(a)(43)(M)(I). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the*

victim or victims of more than $10,000.

When compared with the above definition of an aggravated felony. Chang's statute of conviction is too broad to be a categorical match. Change was convicted under the federal bank fraud statue, which provides the following:

Whoever knowingly executes, or attempts to execute, a scheme or artifice-

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. 1344. Chang's statue of conviction and the first element of 1101(a)(43)(M)(i)'s definition are plainly coextensive; 1344 clearly requires proof of fraud (or attempt to defraud) just as the aggravated felony definition does. However, the statue of conviction is significantly broader than the second element of the aggravated felony definition.

While 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by 1101(a)(M)(43)(i), Chang's conviction is not an aggravated felony on its face." Steve Kie Chang v. Immigration & Naturalization Service, 307 F.3d 1185 (9th Circuit Court of Appeals 2002). In support of this issue, the Court of Appeals for the third Circuit, stated in its option, " In order to qualify as an aggravated felony conviction, this offense had to

Page -7-

involve a loss to a victim or victims that exceeded $10,000." *Aubrey Malcolm Munroe v.*

*John Ashcroft* 353 F.3d 225. (exhibit D)

42.  In *Matahom Sayson Scully A.K.A Scully Sayson,* (April 26, 2004)  the Executive

Office for Immigration Review (EOIR), Board of Immigration Appeals (BIA) held that,

"Where the statutory definition of the offense is not a "categorical match" to the

aggravated felony definition, i.e., encompasses some offenses that would qualify as a

aggravated felony and others that would not, a court may employ a "modified categorical

inquiry" in which the record of conviction is consulted in order to determine whether the

conviction at issue satisfies the fraud and loss requirements of section 101(a)(43)(M)(i)."

As stated the court (or a deciding body) must take the record of conviction into account

since there is no categorical match to the aggravated felony charge.  The DIRECTOR

failed in her efforts to review the criminal record where she would have been able to

determine that the applicant did not cause a loss in excess of $10,000.  Under the plea

agreement the applicant does not plea to a loss of or in excess of $10,000 nor has the

District Court ordered restitution in excess of $10,000.  There is no categorical match and

when the record is further reviewed, there is no modified categorical match as determined

by the BIA and the 9th Circuit Court of Appeals.

43.  The United States Court of Appeals for the third Circuit in Oyenike ALAKA v. Attorney

General of the United States found; "*Alaka was convicted of violating 18 U.S.C. §§ 1344*

*(bank fraud) and 2 (aiding and abetting).  Section 1344 states a person is guilty of bank*

*fraud if he or she knowingly executes, or attempts to execute, a scheme or artifice (1) to*

*defraud a financial institution;  or (2) to obtain any of the moneys, funds, credits, assets,*

Page -8-

securities, or other property owned by, or under the custody or control of, a financial

institution, by means of false or fraudulent pretenses, representations, or promises.

44.    The INA defines "aggravated felony" to include an offense that "involves fraud or deceit

in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. §

1101(a)(43)(M)(i).    Alaka concedes that her bank fraud offense involves fraud, but she

challenges the IJ's determination that the loss exceeded $10,000.

45.    When evaluating whether an offense is an aggravated felony, we presumptively apply the

categorical approach. Francis v. Reno, 269 F.3d 162, 171 (3d Cir. 2001).    This approach

prohibits consideration of evidence other than the statutory definition of the offense, thus

not taking into account the particular facts underlying a conviction. Singh v. Ashcroft

383 F.3d 144, 147-48 (3d Cir. 2004).    However, "the formal categorical approach

properly may be abandoned ... when the terms of the statute on which removal is based

invites inquiry into the facts of the underlying conviction." Knapik v. Ashcroft, 384 F.3d

84, 92 n. 8 (3d Cir. 2004).

46.    We have already determined that 8 U.S.C. § 1101(a)(43)(M)(i) invites further inquiry

because it specifies a mandatory loss amount. Nugent v. Ashcroft, 367 F.3d 162, 175 (3d

Cir. 2004).    Furthermore, our Court has held that "[t]he record of conviction includes

the indictment, plea, verdict, and sentence." Partyka v. Att'y Gen., 417 F.3d 408, 416 (3d

Cir. 2005) (internal quotation marks and citations omitted).    We may also consider "any

explicit factual findings by the trial judge." Shepard v. United States, 544 U.S. 13, 16,

125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

47.    That said, we hold it was legal error for the IJ to consider the amount of intended loss for

-Page -9-

all of the charges rather than the single count for which she was convicted. In reaching our conclusion, we find the opinions of our sister Circuit Courts instructive. The Seventh, Ninth and Tenth Circuits have each been faced with cases where, as here, the Plaintiff had pled guilty to bank fraud in violation of 18 U.S.C. § 1344, the INS argued that the offense was an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(I), and the court had to determine whether conduct underlying dismissed charges could be considered in deciding this issue. *Knutsen v. Gonzales*, 429 F.3d 733 (7th Cir.2005); *Khalayleh v. INS*, 287 F.3d 978 (10th Cir.2002); *Chang v. INS*, 307 F.3d 1185 (9th Cir.2002).

48. First, "the plain and unambiguous language of the statute ... predicates removal on a convicted offense resulting in losses greater than $10,000." *Knutsen*, 429 F.3d at 736 (citing 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(M)(I) (emphasis in original)). As the Seventh Circuit concluded, "[t]his plain language forecloses inclusion of losses stemming from unconvicted offenses." *Id.* at 736-37; *see also Chang*, 307 F.3d at 1190 (holding that "the $10,000 loss requirement" of 8 U.S.C. § 1101(a)(43)(M)(I) **\*107** cannot be divorced from the "conviction requirement"). A focus on the conduct that resulted in a conviction is thus our analytical starting point.

49. Second, in light of the statute's focus on a "conviction," it is the plea agreement that controls our analysis here. In other words, because it is the plea agreement that establishes the offense for which the defendant will be convicted, it is to that agreement, and not the indictment or the sentence, that we look in determining the intended loss. We find the logic of *Chang* particularly persuasive on this point. In that case, Chang had

Page -10-

been charged with 14 counts of bank fraud, "each count corresponding to a bad check that he allegedly passed."  307 F.3d at 1187.  In his plea agreement, Chang agreed that his restitution should fall within the $20,000 to $40,000 range, and he was ultimately ordered to pay over $32,000, an amount that was based on "numerous other alleged fraudulent transactions to which Chang did not plead guilty."  Id. at 1188.  The agreement, however, specified that Chang was pleading guilty to a single count for which the loss to the victim was $605.30.  Id. at 1187.

50.    The Ninth Circuit concluded that the written plea agreement between Chang and the government prevents the INS from treating Chang's bank fraud conviction as an aggravated felony.  The INS must take the plea agreement as the agency finds it, and in this case, ... [t]he text of the plea agreement ... definitively establishes that the only offense of which Chang was convicted falls about $9,400 shy of qualifying as an aggravated felony.

51.    The Plaintiff's conviction does not qualify as an aggravated felony in either the categorical or modified categorical approaches.

## GOOD MORAL CHARACTER

52.    The USCIS (INS) erroneously found that the Plaintiff's conviction was for an aggravated felony and subsequently was not eligible to be found a person of good moral character.

53.    The law requires a naturalization applicant to demonstrate good moral character during only the 5-year statutory period preceding the naturalization application plus the period from the application until the oath.  See INA 316(a), 8 U.S.C. 1427(a) (naturalization

applicant must show good moral character for the statutory period from 5 years prior to

filing the application through admission to citizenship); 8 C.F.R. 316.10(a)(2) (evidence

of pre-statutory period criminal convictions may be considered only where the evidence is

relevant to an applicant's "present moral character") (emphasis added); see also

Santamaria-Ames v. INS 104 F.3d 1127, 1131-1132 (9th Cir, 1996) (good moral character

must be shown for only the statutory period) Petition of Zele, 140 F.2d 773,776 (2nd Cir.

1944) (naturalization applicant need establish good moral character for only 5-year

statutory period prior to the application).

54.    The grant of a 212(c) waiver is discretionary.  The leading case discussing the factors to

be used is Matter of Marin, 16 I & N. 581 (B.I.A. 1978).  In that case, the BIA articulated

the following factors as relevant to the *favorable* exercise of discretion:

    1) family ties in the United States -primarily spouse, children, parents
    2) length of residence-especially if applicant entered as a child;
    3) hardship if deported (even though hardship is not a statutory requirement);
    4) United States Military Service;
    5) steady employment history, property ownership, business ties;
    6) community service;
    7) rehabilitation after criminal convictions; and
    8) good moral character references.

It is undisputed that the Plaintiff was granted a 212(c) waiver and it is further undisputed

that the judge, who issued the 212(c) waiver examined the relevant factors set forth above,

concluded that the Plaintiff is an individual, based upon the facts set forth in Marin, was entitled

to a discretionary 212(c) waiver.

55.    The sole basis for the USCIS's denial of the Plaintiff's naturalization application is that

he has not been a person of good moral character.  This determination was made because

he was found to have committed an aggravated felony. Based upon the foregoing the

Plaintiff is not an aggravated felon.

## RECORD ON MOTION

This motion is based on this document, and on the accompanying Memorandum of Law,

on the attached Exhibits and all of the pleadings and papers on file in this action, and on

whatever evidence and argument that may be allowed at a hearing on this motion.

Respectfully Submitted.

Dated: Astoria, New York
       September 17, 2007

By: _____

Walter Drobenko, Esq.
Drobenko & Associates, P.C.
25-84 Steinway Street
Astoria, N.Y. 11103
(718) 721-2000

c/rr/rajko motion for summary judgement

Page -13-

# UNITED STATES DISTRICT COURT

Southern        District of        New York

Rajko Ljutica

    Plaintiff,

v.

Alberto R. Gonzales,
U.S. Attorney General
Michael Chertoff,
Secretary, Department of Homeland Security
Eduardo Aguirre
Director, U.S. Citizenship &Immigration Services
Andrea J. Qurantillo
Field Office Director, New York, USCIS

    Respondent.

CASE NUMBER

07 CV. 6129

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Walter Drobenko, Esq.
Attorney for the Plaintiff
Drobenko & Associates, P.C.
25-84 Steinway Street
Astoria, N.Y. 11103
(718) 721-2000

**TABLE OF AUTHORITIES**
**FEDERAL CASES**

Aubrey Malcolm Munroe v. John Ashcroft, 353 F.3d 225...............9

Santamaria-Ames v. INS, 104 F.3d 1127, 1131-1132 (9th Cir. 1996)...............10

Steve Kie Chang v. INS, 307 F.3d 1185 (9th Circuit Court of Appeals 2002)......8,9

Petition of Zele, 140 F.2d 773, 776 (2nd Cir.1944)...............10

Marcantonio v. U.S.; 185 F.2d 934, 938 (4th Cir. 1950)...............12

Oyenike ALAKA v. Attorney General of the United States; 456 F.3d 88..........10,11,12

**BOARD OF IMMIGRATION APPEALS CASES**

Matter of Buscemi, 191 I & N 628 (BIA 1988)...............5

Matter of Marin, 161 I & N 581 (BIA 1978)...............5

Matter of Matahom Sayson Scully a.ka. Scully Sayson (BIA 2004)...............9

**FEDERAL STATUTES**

8 U.S.C.1101(a)(43)(M)(I)...............8

8 U.S.C. 1344 & 2...............5,8

**IMMIGRATION AND NATIONALITY ACT**

INA
101(a)(43)(M)(I)...............7,8,9,10,11

INA 212(c)...............4,5,7

INA 316(a)(3)..............................................7

INA 316(e)................................................10

INA 316.10...............................................10

INA 336(a)................................................7

## TITLE 8 CODE OF FEDERAL REGULATIONS

8 C.F.R. 316.2(a)........................................11

8 C.F.R. 316.10(a)(2)...................................10

8 C.F.R. 316.10(b)......................................11

UNITED STATES DISTRICT COURT

Southern          District of          New York

Rajko Ljutica

      Plaintiff,

    v.

Alberto R. Gonzales,
U.S. Attorney General
Michael Chertoff,
Secretary, Department of Homeland Security
Eduardo Aguirre
Director, U.S. Citizenship &Immigration Services
Andrea J. Qurantillo
Field Office Director, New York, USCIS

           Respondents.

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

**CASE NUMBER**

**07 CV. 6129**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY**

**JUDGEMENT**

**FACTS**

1.   Plaintiff, Rajko Ljutica, respectfully submits this memorandum of law in support of his

motion for summary judgment. Mr. Ljutica was granted lawful permanent resident

("LPR") status on September 11, 1998; almost 20 years ago, by a United States

Immigration Judge granting a 212(c) waiver on his behalf. Since this time he has led a

law abiding life, he has maintained gainful employment in the transportation industry as a

private chauffeur and is currently married to a physician and has an infant child.

2.   Mr. Ljutica has spend the past 20 years in the transportation industry first driving a luxury

sedan for hire and then driving exclusively for a well established businessman as his private chauffeur. During this time Mr. Ljutica has sought fit to marry a physician and currently has an infant daughter. Mr. Ljutica has paid all of his taxes as required by law and is a productive member of society

3. On or about April 26, 1990, Mr. Ljutica was arrested for Bank Fraud in New York, New York. He was subsequently pleaded guilty in U.S. District Court for the Southern District of New York to Title 18 U.S.C. 1344 & 2 (Bank Fraud) (Class C Felony).

4. Mr. Ljutica was sentenced to a term of imprisonment of two years of which he served sixteen months incarceration and was required to pay a special assessment of Fifty dollars.

5. On or about April 30, 1991, Mr. Ljutica was arrested in the State of Florida, Dade County and charged with Grand Theft of a Vehicle in the 3rd degree. Mr. Ljutica was never prosecuted on this case.

6. On April 29, 1996, Immigration Judge Matthew Adrian granted Mr. Ljutica lawful permanent residency status ("LPR") based upon the approved of an Immigration and Nationality Act ("INA") 212(c) waiver. A 212(c) waiver is discretionary determination made by the immigration judge. The discretionary elements taken into account are: 1) family ties to the United States; 2) length of residence; 3) hardship; 4) steady employment, property ownership; 5) community service; 6) rehabilitation after criminal convictions; 7) good moral character references. Matter of Marin, 16 I & N 581 (BIA-1978); Matter of Buscemi 19 I & N 628 (BIA-1988).

7. More than six years later, on or about January 13, 2000, Mr. Ljutica filed his naturalization

Page -5-

Plaintiff and was granted a preliminary interview. He truthfully answered all of the questions on the application.

8.   On or about October 8, 2001, the INS Adjudications officer denied the Plaintiff's naturalization application. The INS found that the Plaintiff's arrests and subsequent conviction for Bank Fraud on December 16, 1993 were considered statutorily barring for the Plaintiff from demonstrating "good moral character" which is necessary for naturalization. The Adjudications Officer incorrectly stated that the Plaintiff was arrested four times when in fact he was arrested twice and convicted once. The Adjudications officer in no way indicated that the conviction was considered an aggravated felony for naturalization purposes.

9.   Mr. Ljutica appealed the denial of his naturalization. On October 18, 2002, the INS upheld the denial of the Plaintiffs naturalization but this time for an entire different reason. The officer stated that after review it was determined that Mr. Ljutica has been convicted of Bank Fraud which for naturalization purposes was an aggravated felony and subsequently ineligible to demonstrated good moral character.

10.  On or about March 14, 2005, ten years after the Plaintiffs release from custody a new naturalization application was submitted to the United States Citizenship & Immigration Services (USCIS). He answered all of the questions on the petition truthfully.

11.  On May 6, 2005, Plaintiff completed all biometric requirements for his naturalization.

12.  On or about November 16, 2005, the Plaintiff was advised by USCIS District Adjudications Oficer Wengenroth, that he has passed the required English, U.S. History and Government elements to his naturalization petition.

13.    On or about then District Director Mary Ann Gantner, issued a decision finding that the

       Plaintiff was of poor moral character and an aggravated felon.

14.    On or about October 16, 2006, Plaintiff through counsel appealed the decision of the

       District Director in accordance with section 336(a) of the INA (see Exhibit A).  February

       8, 2007, the Plaintiff appeared with counsel for his appeal.

15.    On March 9, 2007, USCIS Field Office Director Andrea J. Quarantillo issued a decision

       finding that the Plaintiff lacked good moral character and was convicted of an aggravated

       felony.

## ARGUMENT

## Plaintiff's CONVICTION FOR BANK FRAUD DOES NOT QUALIFY AS AN
## AGGRAVATED FELONY.

16.    The United States Citizenship and Immigration Service District Director (herein after

       referred to as the "DIRECTOR") issued a Decision advising the Plaintiff that he is

       ineligible for naturalization based upon an "aggravated felony" and as such is statutorily

       unable to be found as a person of good moral character.  The DIRECTOR erred in her

       findings that Mr. Rajko is ineligible to establish "good moral character" based upon an

       "aggravated felony".  The DIRECTOR misapplied section 101(a)(43)(M)(I) of the Act, as

       amended.  Mr. Ljutica is not an "aggravated felon" and as such is eligible to become a

       United States Citizen.

17.    Section 316(a)(3) of the Act, as amended states that an Plaintiff must be of "good moral

       character" during the statutory five-year period preceding the filing of the [Naturalization]

       petition.  The Plaintiff's criminal conviction referenced to by the DIRECTOR was in

1991; over 15 years ago. The Immigration Judge granted the Plaintiff a 212(c) waiver with no finding of an aggravated felony. Since this time the Plaintiff has led a fulfilling, law abiding life and is gainfully employed. Based on the above the Plaintiff is eligible for naturalization and is not barred from establishing good moral character.

18. The Ninth Circuit Court of Appeals established that there must be a loss to the victim of $10,000 and that the two prong test must be satisfied. *"The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. 1101(a)(43)(M)(I). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000. When compared with the above definition of an aggravated felony. Chang's statute of conviction is too broad to be a categorical match. Change was convicted under the federal bank fraud statue, which provides the following:*

*Whoever knowingly executes, or attempts to execute, a scheme or artifice-*

*(1) to defraud a financial institution; or*

*(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.*

*18 U.S.C. 1344. Chang's statue of conviction and the first element of 1101(a)(43)(M)(i)'s definition are plainly coextensive; 1344 clearly requires proof of fraud (or attempt to defraud) just as the aggravated felony definition does. However, the statue of conviction*

is significantly broader than the second element of the aggravated felony definition. While 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by 1101(a)(M)(43)(i),

Chang's conviction is not an aggravated felony on its face." Steve Kie Chang v. Immigration & Naturalization Service, 307 F.3d 1185 (9th Circuit Court of Appeals 2002). In support of this issue, the Court of Appeals for the third Circuit, stated in its option, "In order to qualify as an aggravated felony conviction, this offense had to involve a loss to a victim or victims that exceeded $10,000." Aubrey Malcolm Munroe v. John Ashcroft 353 F.3d 225.

19.    In Matter of Matahom Sayson Scully A.K.A Scully Sayson, (April 26, 2004) the Executive Office for Immigration Review (EOIR), Board of Immigration Appeals (BIA) held that, "Where the statutory definition of the offense is not a "categorical match" to the aggravated felony definition, i.e., encompasses some offenses that would qualify as a aggravated felony and others that would not, a court may employ a "modified categorical inquiry" in which the record of conviction is consulted in order to determine whether the conviction at issue satisfies the fraud and loss requirements of section 101(a)(43)(M)(i)." As stated the court (or a deciding body) must take the record of conviction into account since there is no categorical match to the aggravated felony charge. The DIRECTOR failed in her efforts to review the criminal record where she would have been able to determine that the Plaintiff did not cause a loss in excess of $10,000. Under the plea

Page -9-

agreement the Plaintiff does not plea to a loss of or in excess of $10,000 nor has the District Court ordered restitution in excess of $10,000. There is no categorical match and when the record is further reviewed, there is no modified categorical match as determined by the BIA and the 9th Circuit Court of Appeals.

20.    The United States Court of Appeals for the third Circuit in Oyenike ALAKA v. Attorney General of the United States found; *"Alaka was convicted of violating 18 U.S.C. §§ 1344 (bank fraud) and 2 (aiding and abetting). Section 1344 states a person is guilty of bank fraud if he or she knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.*

21.    The INA defines "aggravated felony" to include an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Alaka concedes that her bank fraud offense involves fraud, but she challenges the IJ's determination that the loss exceeded $10,000.

22.    When evaluating whether an offense is an aggravated felony, we presumptively apply the categorical approach. Francis v. Reno, 269 F.3d 162, 171 (3d Cir.2001). This approach prohibits consideration of evidence other than the statutory definition of the offense, thus not taking into account the particular facts underlying a conviction. Singh v. Ashcroft 383 F.3d 144, 147-48 (3d Cir.2004). However, "the formal categorical approach properly may be abandoned ... when the terms of the statute on which removal is based invites inquiry into the facts of the underlying conviction." Knapik v. Ashcroft, 384 F.3d 84, 92 n.

Page -10-

8 (3d Cir. 2004).

23.  We have already determined that 8 U.S.C. § 1101(a)(43)(M)(i) invites further inquiry because it specifies a mandatory loss amount. Nugent v. Ashcroft, 367 F.3d 162, 175 (3d Cir. 2004).  Furthermore, our Court has held that "[t]he record of conviction includes the indictment, plea, verdict, and sentence."  Partyka v. Att'y Gen., 417 F.3d 408, 416 (3d Cir. 2005) (internal quotation marks and citations omitted).  We may also consider "any explicit factual findings by the trial judge."  Shepard v. United States, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

24.  That said, we hold it was legal error for the IJ to consider the amount of intended loss for all of the charges rather than the single count for which she was convicted.  In reaching our conclusion, we find the opinions of our sister Circuit Courts instructive.   The Seventh, Ninth and Tenth Circuits have each been faced with cases where, as here, the Plaintiff had pled guilty to bank fraud in violation of 18 U.S.C. § 1344, the INS argued that the offense was an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(I), and the court had to determine whether conduct underlying dismissed charges could be considered in deciding this issue.  Knutsen v. Gonzales, 429 F.3d 733 (7th Cir. 2005);  Khalayleh v. INS, 287 F.3d 978 (10th Cir. 2002);  Chang v. INS, 307 F.3d 1185 (9th Cir. 2002).

25.  First, "the plain and unambiguous language of the statute … predicates removal on a convicted offense resulting in losses greater than $10,000." Knutsen, 429 F.3d at 736 (citing 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(M)(I) (emphasis in original)).  As the Seventh Circuit concluded, "[t]his plain language forecloses inclusion of losses stemming from unconvicted offenses."  Id. at 736-37;  see also Chang, 307 F.3d at 1190 (holding

26.    that "the $10,000 loss requirement" of 8 U.S.C. § 1101(a)(43)(M)(I)*107* cannot be divorced from the "conviction requirement"). A focus on the conduct that resulted in a conviction is thus our analytical starting point.

Second, in light of the statute's focus on a "conviction," it is the plea agreement that controls our analysis here. In other words, because it is the plea agreement that establishes the offense for which the defendant will be convicted, it is to that agreement, and not the indictment or the sentence, that we look in determining the intended loss. We find the logic of Chang particularly persuasive on this point. In that case, Chang had been charged with 14 counts of bank fraud. "each count corresponding to a bad check that he allegedly passed." 307 F.3d at 1187. In his plea agreement, Chang agreed that his restitution should fall within the $20,000 to $40,000 range, and he was ultimately ordered to pay over $32,000, an amount that was based on "numerous other alleged fraudulent transactions to which Chang did not plead guilty." Id. at 1188. The agreement, however, specified that Chang was pleading guilty to a single count for which the loss to the victim was $605.30. Id. at 1187.

27.    The Ninth Circuit concluded that the written plea agreement between Chang and the government prevents the INS from treating Chang's bank fraud conviction as an aggravated felony. The INS must take the plea agreement as the agency finds it, and in this case, ... [t]he text of the plea agreement ... definitively establishes that the only offense of which Chang was convicted falls about $9,400 shy of qualifying as an aggravated felony.

Page -12-

28. The Plaintiff does not meet the categorical analysis or the modified categorical analysis for an aggravated felony and as such is not precluded from establishing good moral character.

29. To be considered of an aggravated felony under INA 101 (a) (43) (M) (1); the two pronged **test must** be satisfied. The criminal conviction and the loss the victim or victims have to be satisfied. These elements cannot be separated out for the SERVICE'S **convince** or personal option's. There was no loss of funds from any Paine Webber accounts, nor was restitution ordered by the court . The SERVICE clearly erred when it found that Mr. Ljutica was convicted of bank fraud and that there was a financial loss to the victim in excess of $10,000.

## Plaintiff MEETS THE STANDARD FOR BEING A PERSON OF GOOD MORAL CHARACTER

30. The relevant period in determining whether a naturalization Plaintiff is a person of good moral character is the five year period prior to filing the application and the period from filing the application to being naturalized. Conduct that falls outside the five year period can be considered, but only as it related to the Plaintiff's moral character during the five year period. 8 C.F.R. 316.10(a)(2); Santamaria-Ames v. INS, 104 F.3d 1127, 1131-1132 (9th Cir. 1996) (good moral character must be shown for only the statutory period); Petition of Zele, 140 F.2d 773, 776 (2nd Cir. 1944) (naturalization Plaintiff need establish good moral character for only the five year statutory period prior to the application).

31. While the service may consider acts beyond the five-year period, said inquiry into acts beyond this statuary period may only be considered **if** the conduct of the Plaintiff during this statuary period does not reflect that there has been a reform of character from the

Page -13-

earlier period INA 316 (e) and INA 316.10 (a) (2).

32. General requirements for neutralization, as stated in 8 CFR Section 316.2 (a), state, in part, that an alien must established that he or she:

(7) For all relevant time periods under this paragraph, has been and continues to be person of good moral character, attached to the principles of the Constitution of the Untied States, and favorably disposed toward the good order and happiness of the United States,

Section 316.10 (b) of 8 CFR further addresses good moral character by specifying, in part, that:

(1) An application shall be found to lack good moral character, if the Plaintiff has been:

(ii) Convicted of an aggravated felony as defined in section 101 (a) (43) of the Act on or after November 29, 1990.

Section 101 (a) INA states in pertinent part that:

43 (43) The term "aggravated felony" means

(M) an offense that

(I) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00.

33. The Plaintiff has a steady job for over 7 years now, and he is the father of two United States Citizen children. He has not been arrested since 1991, and he had certainly reformed his life. He has been paying taxes and has become a productive member of society. There are no crimes during the past five years and he has indeed shown reform since service of his penance. There is no reason to inquire beyond the five year statuary period, as reform has been shown and has even been recognized by the Court. His one mistake, which occurred over 15 years ago, should not permanently bar him from his

Page -14-

dream to become a US citizen.

34.    Mr. Ljutica has demonstrated the characteristics of good moral character during the statutory period for which it is required. The sole conduct in which he engaged that reflects adversely upon him occurred before the statutory period. He has, however made restitution for his crim, and he has committed no crimes since. He has demonstrated his rehabilitation. Marcantonio v. U.S., 185 F.2d 934, 938 (4th Cir. 1950)

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's motion for summary judgment, find Plaintiff is eligible for naturalization as a person of good moral character, and grant his application for naturalization.

Dated: Astoria, New York
September 17, 2007

Respectfully Submitted,

By: _____

Walter Drobenko, Esq.
Attorney for Plaintiff
Drobenko & Associates, P.C.
25-84 Steinway Street
Astoria, N.Y. 11103
(718) 721-2000