EXHIBIT "F"

Department of Homeland Security
U.S. Citizenship and Immigration Services

OMB No. 1615-0050; Expires 10/31/06
N-336, Request for a Hearing on a
Decision in Naturalization Proceedings
(Under Section 336 of the INA)

| For USCIS Only | |
|---|---|
| Decision: ☐ Grant  ☒ Denial | Fee: |

**In the Matter of:** (Name of Naturalization Applicant)

Rajko Ljutica

File Number:
A- 029 512 918

**I am filing a request for hearing on the decision dated:**

September 18, 2006

OCT 16 2006

NATURALIZATION-2
Signature

**Please check the one block which applies:**

☐ I am not submitting a separate brief, statement or evidence.

☒ I am submitting a separate brief, statement and/or evidence with this form.

☐ I need _____ days to submit a brief, statement and/or evidence
to the USCIS. (May be granted only for good cause shown. Explain in a separate letter.)

**Person filing request:**

Name (Type or print in black ink.)

Rajko Ljutica   c/o Drobenko & Associates, P.C.
Address (Street Number and Name)

84 Steinway Street            (Apt. Number)

(City)              (State)         (ZIP Code)
Astoria             New York         11103

Signature                        Date (mm/dd/yyyy)
                                 10-11-06

☒ I am an attorney or representative and I represent the applicant requesting a hearing on a naturalization
proceeding. [You must attach a Notice or Entry or Appearance (Form G-28) if you are an attorney or
representative and did not previously submit such a form.]
(Person for whom you are appearing)
Rajko Ljutica

**Briefly state the reason(s) for this request for a hearing:**

SEE ATTACHED BRIEF

THE SERVICE ERRED AND MISAPPLIED THE RELEVANT

LAW & THE FACTS.

Form N-336 (Rev. 05/08/06)Y

UNITED STATES DEPARTMENT OF HOMELAND SECURITY
U.S. CITIZENSHIP & IMMIGRATION SERVICE
26 FEDERAL PLAZA
NEW YORK, N.Y. 10278

_____X

In the Matter of                    A29 512 918

RAJKO LJUTICA

-Application for Naturalization

_____X

## BRIEF ON APPEAL

This brief is submitted in support of our appeal submitted herewith (Form N-336).

The applicant seeks to appeal the decision of the District Director dated September 18, 2006 with regard to his application for Naturalization, which was denied by the U.S. Citizenship & Immigration Service (hereinafter the "SERVICE") on that date. A copy of the decision is annexed hereto as Exhibit "A". We respectfully request a hearing with regard to this appeal, and adjudication of the appeal in the most expeditious manner possible.

## FACTS

The applicant initially submitted an Application for Naturalization (Form N-400) on March 28, 2005. He was called for an interview before the SERVICE at 26 Federal Plaza, New York, N.Y., on November 16, 2005. On said date, the applicant passed all components of the History, English and writing examination with regard to his Naturalization Examination.

Nonetheless, on September 18, 2006, the SERVICE decided that "pursuant to an investigation and examination of your application, it was determined that you are ineligible for naturalization for the following reason(s):

"You have been convicted of an aggravated felony, as defined in INA Section 101 (a)(43)(M)(I), after November 29, 1990, to wit: December 17,

1

1993. As such, you are precluded from ever establishing good moral character for naturalization purposes, pursuant to INA Sections 101 (f) (8) and 8 CFR Section 316.10 (b) (1) (ii). You are, therefore, ineligible for naturalization and your application for naturalization is denied."

## THE PETITIONER HAS GOOD MORAL CHARACTER

The SERVICE misapplied the facts to INA as follows:

First and foremost, the Petitioner in 1991 was arrested and charged with attempted bank fraud.

INA Section 316(b) states in pertinent part:

"The applicant shall bear the burden of establishing by a preponderence of the evidence that he or she meets all requirements for naturalization . . ."

INA Section 316.10(a) states in pertinent part that:

"An application for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character."

INA Section 316.10(a)(2) states:

"In accordance with Section 101(f) of the Act, the Service shall evaluate claims of good moral character on a case by case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence. The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been a reform of character from the earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character".

In the instant case, the statutory time period is five (5) years preceding the application for naturalization. The Petitioner submitted his application in March 28, 2005. While the SERVICE may consider acts beyond the five-year period, said inquiry into acts beyond this statutory period may only be considered if [emphasis added herein] the

conduct of the applicant during statutory period does not reflect that there has been a reform of character from the earlier period §316 (e) and INA §316.10 (a) (2).

General requirements for Naturalization, as stated in 8 CFR Section 316.2 (a), state, in part, that an alien must established that he or she:

(7) For all relevant time periods under this paragraph, has been and continues to be person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States,

Section 316.10 (b) of 8 CFR further addresses good moral character by specifying, in part, that:

(1) An application shall be found to lack good moral character, if the applicant has been :

(ii) Convicted of an aggravated felony as defined in section 101 (a) (43) of the Act on or after November 29, 1990.

Section 101 (a) INA states in pertinent part that:

(43) The term "aggravated felony" means

(M) an offense that

(I) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00.

An Petitioner shall only be found to lack good moral character where DURING THE STATUTORY FIVE-YEAR PERIOD, the applicant committed one or more crimes involving moral turpitude for which the applicant was convicted. INA § 316.10 (b) (2).

This is not the case here. The applicant's only crime occurred in 1991. This crime was not within the statutory period.

Section 316(a)(3) of the Act, as amended states that an applicant must be of "good moral character" during the statutory five-year period preceding the filing of the

3

[Naturalization] petition. The applicant's criminal conviction referenced to by the SERVICE was in May 26, 1993 for a crime which took place 1991, over 15 years ago. The Immigration Judge granted the applicant a 212(c) waiver with no finding of an aggravated felony. Since this time the applicant has led a fulfilling, law abiding life and is gainfully employed. Based on the above the applicant is eligible for naturalization and is not barred from establishing good moral character.

The applicant satisfactorily completed his punishment as well as his supervised release. He was granted 212 (C) relief from the Immigration Judge, in 1996 which means that he had satisfied the Immigration Judge that he had indeed reformed himself and that he possessed good moral character warranting 212 (c) waiver. Please see the 212(c) Order of the Immigration Judge, which is attached hereto as Exhibit "B".

The grant of a § 212(c) waiver is discretionary. The leading case discussing the factors to be used is *Matter of Marin*, 16 I. & N. 581 (B.I.A. 1978). In that case, the BIA articulated the following factors as relevant to the *favorable* exercise of discretion:

1. family ties in the United States-primarily spouse, children, parents;
2. length of residence-especially if applicant entered as child;
3. hardship if deported (even though hardship is not a statutory requirement);
4. United States military service;
5. steady employment history, property ownership, business ties;
6. community service;
7. rehabilitation after criminal conviction; and
8. good moral character references.

In the instant case, it is undisputed that the Petitioner was granted a 212(c) waiver and it is further undisputed that the Judge, who issued the 212(c) waiver examined the relevant factors set forth above, concluded that Mr. Ljutica is an individual, based upon the facts set forth in *Marin*, entitled to discretionary 212(c) waiver. The judge interviewed applicant for several hours. Based upon the fact that the Judge issued a 212(c) waiver the SERVICE is now precluded and estopped from arguing that the Petitioner does not have a good moral character. There is nothing that transpired between the granting of the 212(c)

4

waiver to the time of the Petitioner filing the current N-400 application that would warrant the SERVICE from going beyond the statutory five year period.

Presently, the Petitioner has a steady job since 1995 in the limousine and transportation industry. He obtained a N.Y.C. Taxi & Limousine License in 1995/96. He purchased a cooperative apartment in 2000. Petitioner is the father of a 17 year old USC child and has been paying child support in the amount of $500.00 per month since1995 to current. On June 15, 2006 Petitioner has a second USC child. He has not been arrested since 1991. He has been paying taxes and has become a productive member of society. There are no crimes during the past five years and he has indeed established reform since 1991.

Based upon the above there is no reason to inquire beyond the five year statutory period, as reform has been shown and has even been recognized by the Court. Petitioner's one mistake, which occurred over 15 years ago, should not permanently bar him from his dream to become a US citizen.

## PETITIONER IS NOT AN AGGRAVATED FELON

The SERVICE issued a decision advising the petitioner that he is ineligible for naturalization based upon an "aggravated felony" and as such is statutorily unable to be found as a person of good moral character. The SERVICE erred in the findings that Mr. Rajko is ineligible to establish "good moral character" based upon an "aggravated felony". The SERVICE misapplied section 101(a)(43)(M)(I) of the Act, as amended. The Petitioner is not an "aggravated felon" and as such is eligible to become a United States Citizen.

On March 28, 2005, Immigration form N-400, Application for Naturalization was received by the United States Citizenship and Immigration Service. On May 6, 2005, the applicant completed his biometric requirement at the Varick Street Center. On November 16, 2005, applicant and counsel appeared for naturalization interview applicant passed all

tests administered at this time. At this time the Adjudications Officer Wengenroth advised counsel that the applicant's name check was still pending. In addition, in support of the applicant's petitioner for naturalization photographs were submitted, the social security number and the permanent residency card was verified and presented, the divorce disposition was submitted, the dispositions of criminal cases were presented, and the 212 (c) waiver was contained in the file. However, on September 18, 2006, the SERVICE denied the petitioner's naturalization and in doing so stated that:

"Mr. Ljutica was arrested on December 23, 1991 for bank fraud. Your involvement in the bank fraud was having your wife at the time, Jillian Nuttbrock, attempt to wire transfer over $470,000 from accounts at Paine Webber, where she worked, to an account at Manufacturers Hanover Trust that was under your name. On May 26, 1993, you were convicted and sentenced to spend 16 months in jail and to serve two years under supervised release. For this conviction, you spent over one year in jail According to section 101(a)(43)(M)(I) of the INA, stated above, your conviction for bank fraud in 1993 constitutes an aggravated felony".

The SERVICE's conclusion that the Petitioner is an "aggravated felon" is without any merit and contrary to well established case law and Section 101 (a) of the INA. To be considered an aggravated felony under INA 101 (a)(43)(M)(1) the two pronged test **must** be satisfied. The criminal conviction and the loss to the victim or victims have to be satisfied. These elements cannot be separated out for the SERVICE's convenience or personal option. In the instant case there was no loss of funds from any Paine Webber accounts, nor was restitution ordered by the court. Moreover, Mr. Ljutica's conviction was for attempted bank fraud **not** bank fraud as erroneously stated in the SERVICE's denial of September 18, 2006.

The SERVICE clearly erred when it failed to apply the two prong test under Section 101 (a) INA and found that Mr. Ljutica was convicted of an aggravated felony precluding him from ever establishing good moral character for naturalization purposes.

Section 101 (a) INA clearly states in pertinent part that:

(43) The term "aggravated felony" means

(M) an offense that
(I) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00.

In the instant case Petitioner was convicted of attempted bank fraud but there was no loss to the victim or victims exceeding $10,000.00.

The two prong test was applied in Steve Kie Chang v. Immigration & Naturalization Service, 307 F.3d 1185 (9th Circuit Court of Appeals 2002). In Chang, the Ninth Circuit Court of Appeals established that there must be a loss to the victim of $10,000 and that the two prong test must be satisfied. The Court of Appeals held that: "The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. 1101(a)(43)(M)(I). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000.

When compared with the above definition of an aggravated felony. Chang statute of conviction is too broad to be a categorical match. Chang was convicted under the federal bank fraud statute, which provides the following:

Whoever knowingly executes, or attempts to execute, a scheme or artifice-

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. 1344. Chang's statute of conviction and the first element of 1101(a)(43)(M)(I)'s definition are plainly coextensive; 1344 clearly requires proof

7

of fraud (or attempt to defraud) just as the aggravated felony definition does. However, the statute of conviction is significantly broader than the second element of the aggravated felony definition. While 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by 1101(a)(M)(43)(i), Chang's conviction is not an aggravated felony on its face."

In addition, the Court of Appeals for the Third Circuit, in Aubrey Malcolm Munroe v. John Ashcroft 353 F.3d 225 held that "In order to qualify as an aggravated felony conviction, the offense had to involve a loss to a victim or victims that exceeded $10,000."

In Matter of Matahom Sayson Scully A.K.A Scully Sayson (April 26, 2004) the Executive Office for Immigration Review (EOIR), Board of Immigration Appeals (BIA) held that:

"Where the statutory definition of the offense is not a "categorical match" to the aggravated felony definition, i.e., encompasses some offenses that would qualify as a aggravated felony and others that would not, a court may employ a "modified categorical inquiry" in which the record of conviction is consulted in order to determine whether the conviction at issue satisfies the fraud and loss requirements of section 101(a)(43)(M)(i)."

As stated the SERVICE must take the record of conviction into account since there is no categorical match to the aggravated felony charge. The SERVICE totally ignored the Petitioner's certificate of disposition relating to the attempted bank fraud. Attached hereto as Exhibit "C" is a copy of the Judgment a Criminal Case. Simply

8

looking at the judgment would reveal the fact that the Mr. Ljutica did not cause a loss in excess of $10,000. Under the plea agreement the applicant did not plea to a loss of or in excess of $10,000 nor has the District Court ordered restitution in excess of $10,000.

There was only a special assessment of $50.00. There is no categorical match and when the record is further reviewed, there is no modified categorical match as determined by the BIA and the 9th Circuit Court of Appeals.

Reviewing the record the SERVICE erred, when it determined that the applicant was convicted of fraud. In fact, the applicant was convicted of attempted fraud. When considering an attempt charge the BIA In Matter of Eduardo Dayag Pabalan, (December 09, 2004) held that, "We agree that with the Immigration Judge that paragraph (U) cannot stand alone, and that the offense that the respondent conspired to commit must fit within one of the specific aggravated felony provisions."

Based upon the above case law dealing with the "aggravated felony", the applicant does not meet the categorical analysis or the modified categorical analysis for an aggravated felony as set forth in Chang and therefore cannot be considered an aggravated felon. Moreover, based upon the 212(c) waiver Mr. Ljutica can establish and has established good moral character. Consequently, the applicant must have his petition for Naturalization expeditiously approved and scheduled for Naturalization.

For all of the foregoing reasons, the applicant's appeal should be granted and his application for naturalization be approved at this time. We ask for a speedy adjudication of this case as the error rests in the misreading of the conviction record by the Service.

Respectfully submitted,

Walter Drobenko

# RE: Rajko Ljutica
## Appeal on N-400 Application

### Index:

## Brief on Appeal

A.  Decision

B.  212(c) waiver

C.  Naturalization Interview Results

D.  Certification of Criminal Disposition dated March 13, 2000 from Southern District

E.  Circuit Court Dade County - Criminal Division with a "No Action" as the dispostion

F.  Waiver of Deportability 212(c) requirements

G.  Case Law relating to the aggravated felon.

H.  Form N-400

EXHIBIT "A"

**U.S. Department of Homeland Security**
United States Citizenship and Immigration Services
26 Federal Plaza, Room 700
New York, NY 10278

Date: September 18, 2006.
Alien#: 29 512 918

[illegible] Pst
[...]ajko Ljutica
[...]0 Malcolm X Blvd Apt. 705
[...]ew York, NY 10029

## DECISION

[O]n November 16, 2005 you appeared for an examination of your application for [n]aturalization, which was filed in accordance with Section 316 of the Immigration and [N]ationality Act.

[P]ursuant to an investigation and examination of your application, it was determined that [y]ou are ineligible for naturalization for the following reason(s):

## See Attachment(s)

[I]f you desire to request a review hearing on this decision pursuant to Section 336(a) of [th]e Act, you must file a request for a hearing **within 30 Days of the date of this** [n]otice. If no request for hearing is filed within the time allowed, this decision is final. A [re]quest for hearing may be made to the District Director, with the Immigration and [N]aturalization office which made the decision, on Form N-336, **Request for Hearing on** [a] **Decision in Naturalization Proceedings under Section 336 of the Act, together with** [a] **fee of $265.** A brief or other written statement in support of your request may be [s]ubmitted with the Request for Hearing.

[S]incerely,

Mary Ann Gantner
District Director Services

Enclosure: Form N-336
Form N-335 (Rev. 10/24/91)N
Certified mail/RM
Cc: Atty

Attachment(s) to Form N-335

Applicant: Rajko Ljutica
Application for Naturalization, Form N-400
Alien Number: A 29 512 918

Your application is hereby denied in accordance with the Title 8 Code of Federal Regulations
Section(s) listed below:

**Reason:**        Poor Moral Character, Aggravated Felon
**CFR8 Reference:** Part 316  General Requirements for Naturalization
                   Section 316.10 Good Moral Character

General requirements for Naturalization as stated in Section 316.2 state, in part, that an alien must establish that he or she:
(7) For all relevant time periods under this paragraph, has been and continues to be a person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States,

Section 101 (f) of the Immigration and Nationality Act states, in part, that, "[f]or the purposes of this Act-No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was...
(8) one who at any time has been convicted of an aggravated felony...

Section 316.10 (b) further addresses good moral character by specifying, in part, that:

(1) An applicant shall be found to lack good moral character, if the applicant has been:
(ii) Convicted of an aggravated felony as defined in section 101 (a)(43) of the Act on or after November 29, 1990.

Section 101 (a) of the INA states, in part:

(43) The term "aggravated felony" means...
(M) an offense that...
(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000

Rajko Ljutica
A 29 512 918

**Explanation:**

According to CIS records and certified court documents that you submitted, you were arrested on or about December 23, 1991 for bank fraud. Your involvement in the bank fraud was having your wife at the time, Jillian Nutbrock, attempt to wire transfer over $470,000 from accounts at Paine Webber, where she worked, to an account at Manufacturers Hanover Trust that was under your name. On May 26, 1993, you pled guilty to bank fraud related to the aforementioned charge. On December 17, 1993, you were convicted and sentenced to spend 16 months in jail and to serve two years under supervised release. For this conviction, you spent over one year in jail.

According to Section 101 (a)(43)(M)(i) of the INA, stated above, your conviction for bank fraud in 1993 constitutes an aggravated felony.

**Conclusion:**

You have been convicted of an aggravated felony, as defined in INA Section 101 (a)(43)(M)(i), after November 29, 1990, to wit December 17, 1993. As such, **you are precluded from ever establishing good moral character for naturalization purposes, pursuant to INA Sections 101 (f)(8) and 8 CFR Section 316.10 (b)(1)(ii). You are, therefore, ineligible for naturalization and your application for naturalization is denied.**

EXHIBIT "B"

**U.S. DEPARTMENT OF JUSTICE**
Executive Office for Immigration Review
Office of the Immigration Judge

Case No.: A 27 512 918

Docket: NEW YORK

IN DEPORTATION PROCEEDINGS

Matter of:

KO LJUTICA

RESPONDENT

## ORDER OF THE IMMIGRATION JUDGE

A summary of the oral decision entered on 29 APRIL 1996
This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral decision will become the official decision in this matter.

The respondent was ordered deported to _____

Respondent's application for voluntary departure was denied and respondent was ordered deported to _____ or in the alternative to _____

Respondent's application for voluntary departure was granted until _____, with an alternate order of deportation to _____ or _____

Respondent's application for asylum was ( )granted (X)denied ( )withdrawn ( )other.

Respondent's application for withholding of deportation was ( )granted (X)denied ( )withdrawn ( )other.

Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

Respondent's application for waiver under Section 212 (c) _____ of the immigration and Nationality Act was (X)granted ( )denied ( )withdrawn ( )other.

Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

Proceedings were terminated.

The application for adjustment of status under Section (216)(216A)(245)(249) was ( )granted ( )denied ( )withdrawn ( )other. If granted, it was ordered that respondent be issued all appropriate documents necessary to give effect to this order.

Respondent's status was rescinded under Section 246.

Other: _____

Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the Immigration Judge's oral decision.

Immigration Judge MATTHEW T. ADRIAN

Date: 29 APRIL 1996

Form EOIR-27
REV-JUNE93

RESERVED/WAIVED ( A/I/B )

**EXHIBIT "C"**

t of Justice
and Naturalization Service

Naturali... on Interv. Results

A#: 029 512 918

13 = 00 , you were interviewed by INS Officer [signature]

___sed the tests of English and U.S. history and government
___sed the test of U.S. history and government and the English language requirement was

___ice has accepted your request for a Disability Exception. You are exempted from the
___ent to demonstrate English language ability and/or a knowledge of U.S. history and
___ent.

___ be given another opportunity to be tested on your ability to ___ speak / ___ read /
___ write English.

___ be given another opportunity to be tested on your knowledge of U.S. history and
___ent.

___ English ability / ___ knowledge of

___llow the instructions on the Form N-14.
___send you a written decision about your application.

___ot pass the second and final test of your ___ English ability / ___ knowledge of
___ry and government. You will not be rescheduled for another interview for this N-400.
___send you a written decision about your application.

___ Congratulations! Your application has been recommended for approval. At this
___rs that you have established your eligibility for naturalization. If final approval is granted,
___otified when and where to report for the Oath Ceremony.

___ A decision cannot yet be made about your application.

___ery important that you:
___S if you change your address.
___ny scheduled interview.
___l requested documents.
___ questions about this application in writing to the officer named above. Include your full
___number, and a copy of this paper.
___oath ceremony that you are scheduled to attend.
___S as soon as possible in writing if you cannot come to any scheduled interview or oath
___. Include a copy of this paper and a copy of the scheduling notice.

N-652 (Rev. 10/00)Y

EXHIBIT "D"



# *CERTIFICATION OF CRIMINAL DISPOSITION*

## Certified Copy of Criminal Docket Entries

### The attached is a true copy of the docket entries for:

**Case Number:** 91-CR-1029-2 (SWK)

**Defendant's Name:** RAJKO LJUJICA

*JAMES M. PARKISON*
*Clerk of Court.*

by: _____
*Deputy Clerk*

*TRUE COPY OF THE DOCKET ENTRIES*
*DATED: NEW YORK, N.Y.*

MARCH 13, 2000

57719-0044

Certified as a true copy or
This Date: 12-17-9
By R. Sanchez
(✓) Clerk
(✓) Deputy

# United States District Court

District of NEW YORK

SOUTHERN

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

UNITED STATES OF AMERICA

V.

RAJKO LJUTICA

(Name of Defendant)

Case Number: 91-01029-02 (SWK)

DAVID SCHMIDT
_____
Defendant's Attorney

DEFENDANT:

pleaded guilty to count(s) 2
was found guilty on count(s)
a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 1344 & 2 | BANK FRAUD (CLASS C FELONY) | 4/18/90 - 4/26/90 | 2 |

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s)
Count(s) 1 is(are) dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall pay a special assessment of $ 50.00 for count(s) 2, which shall be due ☒ immediately ☐ as follows:

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 10/12/57

Defendant's Mailing Address:

MICHIGAN AVENUE, APT 24

MIAMI BEACH, FLORIDA 33140

Defendant's Residence Address:

SAME AS ABOVE

DECEMBER 16, 1993
_____
Date of Imposition of Sentence

_____
Signature of Judicial Officer

SHIRLEY WOHL KRAM, U.S.D.J.
Name & Title of Judicial Officer

_____
Date

Form (Rev. 4/90) Sheet 1 - Judgment in a Criminal Case

AO901 Sheet 2 - Imprisonment

RAJKO LJUTICA
ber: 91-01029-02  (SWK)                    Judgment—Page 2 of 4

## IMPRISONMENT

fendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for
15 MONTHS

rt makes the following recommendations to the Bureau of Prisons:

dant is remanded to the custody of the United States marshal.
dant shall surrender to the United States marshal for this district,

10 a.m. on JANUARY 3, 1994

notified by the United States marshal.
dant shall surrender for service of sentence at the institution designated by the Bureau of Prisons,
fore 2 p.m. on
notified by the United States marshal.
notified by the probation office.

## RETURN

executed this judgment as follows:

dant delivered on *1/4/94* to *FCI FCT* _____ at

_____, with a certified copy of this judgment.

1-20-94
Rec To USP Lewisburg
D. Hardy KS

By _____
United States Marshal

AO 245 S Sheet 3 - Supervised Release

RAJKO LJUTICA
: 91-01029-02  (SWK)

Judgment—Page 3 of 4

## SUPERVISED RELEASE

...lease from imprisonment, the defendant shall be on supervised release for a term of _____

2) YEARS

...n supervised release, the defendant shall not commit another federal, state, or local crime and shall not
...ess a controlled substance. The defendant shall comply with the standard conditions that have been
...his court (set forth below). If this judgment imposes a restitution obligation, it shall be a condition of
...elease that the defendant pay any such restitution that remains unpaid at the commencement of the
...ervised release. The defendant shall comply with the following additional conditions:

...ndant shall report in person to the probation office in the district to which the defendant is released
... hours of release from the custody of the Bureau of Prisons.

...ndant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

...ndant shall not possess a firearm or destructive device.

## STANDARD CONDITIONS OF SUPERVISION

...efendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local crime.   In addition:

...ant shall not leave the judicial district without the permission of the court or probation officer;

...ant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete report within
... days of each month;

...ant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

...ant shall support his or her dependents and meet other family responsibilities;

...ant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

...ant shall notify the probation officer within 72 hours of any change in residence or employment;

...ant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled
..., or any paraphernalia related to such substances, except as prescribed by a physician;

...ant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

...ant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless
...mission to do so by the probation officer;

...ant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed
...aw by the probation officer;

...ant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

...ant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

...d by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal
...characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification
...ant.

JUDGMENT Sheet 7 - Statement of R___

RAJKO LJUTICA

____er:91-01029-02 (SWK)

Judgment - Page ___

4

## STATEMENT OF REASONS

___rt adopts the factual findings and guideline application in the presentence report.

OR

___rt adopts the factual findings and guideline application in the presentence report except
___achment, if necessary):

### Range Determined by the Court:

___fense Level: _____

___l History Category: _____

___nment Range: _____ to _____ months

___sed Release Range: _____ to _____ years

___nge: $ _____ to $ _____

☐ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

___tion: $ _____

☐ Full restitution is not ordered for the following reason(s): _____

___ntence is within the guideline range, that range does not exceed 24 months, and the court finds no
___ to depart from the sentence called for by application of the guidelines.

OR

___ntence is within the guideline range, that range exceeds 24 months, and the sentence is imposed
___ following reason(s):

OR

___nce departs from the guideline range

___n motion of the government, as a result of defendant's substantial assistance.

___ the following reason(s):

EXHIBIT "E"

CIRCUIT COURT DADE COUNTY - CRIMINAL DIVISION

SECTION 03        CASE NO 91-015547

JUTICA, RAJKO        10/12/57
00 10 ST #1          W/M
IA BEACH FL  33139   9598959

97 PTR               ARRESTED
                     4/29/91

NEW ADDRESS

ADDRESS

DATE

ADJUDGED INSOLVENT - APPT. P.

APR 3 0 1991

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original filed in this office.
HARVEY RUVIN, Clerk

ESTREATURE

ARRESTED ON
S - A/C - AW - P/W)

CLERK          MAY 2 0 1991

UILTY

R OF JURY

SE

RTER

TER

CLERK'S MINUTES

| | DEFT. ACTION DATE | ORAL NOTICE | CONTINUED TO/FOR | | S | | D |
|---|---|---|---|---|---|---|---|
| | APR 3 0 1991 | | MAY 2 0 1991 | | | | |
| | MAY 2 0 1991 | | | | | | |

MATION DISMISSED

DISMISSED

FORMATION    MAY 2 0 1991

E PROS

A

CIRCUIT AND COUNTY COURTS OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA

IN AND FOR MIAMI-DADE COUNTY

ARVEY RUVIN, CLERK OF THE CIRCUIT AND COUNTY COURT OF THE ELEVENTH
CIRCUIT OF FLORIDA, IN AND FOR MIAMI-DADE COUNTY, DO HEREBY CERTIFY
ILIGENT EXAMINATION OF THE FELONY FILES AND RECORDS IN MY OFFICE
G:

NAME: LJUTICA, RAJKO
DATE OF BIRTH: 10/12/1957
RACE: WHITE        SEX: MALE
YEARS RESEARCHED: 1991 - 1991

S THE FOLLOWING:

CITATION/
ARREST /
BER    FILE    DATE    CHARGES                    DISPOSITION         DISPO DATE
******************************************************************************
7    04/30/1991  GRD THFT/3D/VEHICLE    NO ACTION
******************************************************************************

UANT TO FLORIDA RULES OF COURT (RULE 2.075), RETENTION OF COURT
THE REQUIREMENT FOR RETAINING MISDEMEANOR CASES IS 5 YEARS,
NY CASES (NOT ADJUDICATED GUILTY) IS 10 YEARS, THEREFORE, THE
LE(S) IS/ARE UNAVAILABLE IF ANY OF THEM HAVE AN APPLICABLE
ION DATE.

ESS MY HAND AND THE SEAL OF THE COURT AT MIAMI, MIAMI-DADE COUNTY,
THIS 01 DAY OF  FEBRUARY, 2002.

HARVEY RUVIN, CLERK
CIRCUIT AND COUNTY COURTS
IN AND FOR MIAMI-DADE COU

BY: _____
DEPUTY CLERK
Deputy Clerk of the Circuit Court
of the Eleventh Judicial Circuit
of Florida, in and for Dade County

EXHIBIT "F"

Westlaw Download Summary Report for RINELLO,RALPH 5863107

| Date/Time of Request: | Tuesday, October 10, 2006 08:06:00 Central |
|---|---|
| Client Identifier: | BNL |
| Database: | IMLD |
| Citation Text: | IMLD § 8:41 |
| Lines: | 134 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Immigration Law and Defense 3d
Database updated August 2006

National Immigration Project of the National Lawyers Guild
Chapter 8. Relief from Deportation

References <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=149031&DocName=IMLDDMYREFCH8&FindType=Y>

§ 8:41. Waivers of deportability—Procedure for § 212(c) relief

The application for § 212(c) relief is made on Form I-191, submitted with appropriate supporting documents.[FN1] The application for Cancellation of Removal is submitted on Form EOIR-42. The scenario of the deportation hearing is as follows:

. Typically, counsel for respondent will admit the allegations and charges in the Order to Show Cause, to wit, that the respondent has been convicted of a certain crime and is therefore deportable. However, if the allegations are technically incorrect, counsel should insist on a new Order to Show Cause in order to secure additional time to show that the respondent has been rehabilitated. Also, counsel should insist that the trial attorney submit certified copies of the conviction. After admitting the allegations and charge in the Order to Show Cause, counsel for respondent will then move for discretionary relief pursuant to § 212(c).[FN2]

The grant of a § 212(c) waiver is discretionary. The leading case discussing the factors to be used is Matter of Marin, 16 I. & N. 581 (B.I.A. 1978) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650&FindType=Y&SerialNum=1978020928>. In that case, the BIA articulated the following factors as relevant to the *favorable* exercise of discretion:

1. family ties in the United States-primarily spouse,[FN3] children, parents;
2. length of residence-especially if applicant entered as a child;
3. hardship if deported (even though hardship is not a statutory requirement);[FN4]
4. United States military service;
5. steady employment history, property ownership, business ties;
6. community service;
7. rehabilitation after criminal conviction; and
8. good moral character references.

The BIA instructed the immigration judge to balance these factors against the negative aspects, such as

the nature of the grounds establishing deportability, the number and significance of violations of the immigration law and other indications of the undesirability or bad character of the applicant. Each of these factors must be considered on the courts of appeal are likely to remand a decision denying 212(c) relief. [FN5] The BIA has considerable latitude as to what it may consider in assessing the character of the applicant. A court of appeals has held that the Board may even consider negative conduct which does not result in a criminal conviction. Paredes-Urrestarazu v. INS, 22 F.3d 909 (9th Cir. 1994) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000506&FindType=Y&SerialNum= 1994091535> opinion withdrawn and superseded in Paredes-Urrestarazu v. INS, 36 F.3d 801 (9th Cir. 1994) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000506 &FindType=Y&SerialNum=1994173716>. See § 6.9 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0 &vr=2.0&DB=149027&DocName=IMLDs0%3A3A9&FindType=Y>. Nevertheless, the courts of appeal will reverse and remand if the BIA considers certain categories of criminal convictions (e.g., narcotics offenses) on a blanket rather than an individual basis. See Elramly v. INS, 49 F.3d 535 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000506&FindType=Y&SerialNum= 1995057424>, amended, 73 F.3d 220 (9th Cir. 1995) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0 &vr=2.0&DB=0000506&FindType=Y&SerialNum=1996021541>, judgment vacated and case remanded to the court of appeals for further consideration in light of AEDPA, I.N.S. v. Elramly, 518 U.S. 1051, 117 S. Ct. 31, 135 L. Ed. 2d 1123 (1996) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB= 0000708&FindType=Y&SerialNum=1996214772>.

In Matter of Buscemi, 19 I. & N. 628 (B.I.A. 1988) <http://www.westlaw.com/Find/Find/wl? rs=dfa1.0&vr=2.0&DB=0001650&FindType=Y&SerialNum=1988317842>, the Board found that a drug conviction or other serious crime was a substantially adverse factor which increased the alien's burden to establish countervailing positive factors and requires a showing of "unusual or outstanding equities."[FN6] The harsh language in Buscemi and Marin was somewhat modified by the holding of Matter of Edwards, 20 I. & N. 191 (B.I.A. 1990) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1990190731>. In Edwards, the BIA stated that a clear showing of reformation is not an absolute prerequisite. Moreover, the BIA has stated that aliens convicted of aggravated felonies do not have to meet a heightened discretionary standard beyond the factors set forth in Marin, and prior cases. See Matter of Roberts, Int. Dec. 3148 (B.I.A. 1991) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0 &vr=2.0&DB=0001651&FindType=Y&SerialNum=1991218671>. Cases involving convicted aliens must be adjudicated on a case-by-case basis.

On an important procedural point, the BIA has ruled that an applicant's departure during the pendency of § 212(c) proceedings does not require termination or constitute abandonment of the application. Matter of Brown, 18 I. & N. 324 (B.I.A. 1982) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0 &DB=0001650&FindType=Y&SerialNum=1982028548>.

Section 212(c) relief is valid indefinitely (rather than for a single entry) but it covers only those grounds specified in the application.[FN7] It is thus extremely important to include all relevant offenses on Form I-191. In addition, it is important to note that the BIA has dramatically revised the definition of "conviction" for immigration purposes.[FN8] Thus, the disposition of each offense should be carefully evaluated in light of the present more expansive definition. The BIA has held that INS cannot seek to reopen deportation proceedings in which the alien had been granted § 212(c) relief on the basis that the alien had two additional convictions.[FN9] Rather, a new Order to Show Cause must be issued to address subsequent criminal conduct or immigration violations. The BIA has also held that a grant of 212(c) relief does not forever pardon or expunge a conviction which gave rise to deportability. Thus, even when 212(c) relief has been granted to an alien with a deportable criminal conviction, that conviction may be alleged in a later deportation proceeding as one of the "two crimes involving moral turpitude" if the second crime alleged is a subsequent conviction or was not disclosed in the earlier deportation proceeding.[FN10]

[FN1] The § 212(c) waiver may be requested from the district director before deportation proceedings are commenced. 8 C.F.R. § 212.3 212.3 <http://www.westlaw.com/Find/Find/wl? proceedings are commenced.8 C.F.R. § 212.3 212.3 <http://www.westlaw.com/Find/Default.wl? rs=dfa1.0&vr=2.0&DB=1000547&DocName=8CFRS212.3&FindType=Y>. The traditional strategy, however, has been to wait for the INS to initiate deportation proceedings rather than to

affirmatively file and bring the client to the attention of INS. In any event, INS Acting Commissioner for Adjudications Louis Crocetti has taken the position that 8 C.F.R. § 212.3 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=1000547&DocName=8CFRS212.3&FindType=L> does not allow aliens to request § 212(c) as a form of relief from deportation prior to the actual institution of deportation proceedings. See 71 Interpreter Releases 949 (July 18, 1994).

[FN2] See also Matter of Salmon, 16 I. & N. 734 (B.I.A. 1978) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1978209921> Sierra-Reyes v. INS, 585 F.2d 762 (5th Cir. 1978) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000350 &FindType=Y&SerialNum=1978120709> Matter of Wadud, 19 I. & N. 182 (B.I.A. 1984) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1984029360> (immigration judge's favorable exercise of discretion reversed by BIA). And see § 840 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0 &DB=149027&DocName=IMLDs8%3A40&FindType=Y>.

[FN3] In Kahn v. INS, 20 F.3d 960 (9th Cir. 1994) <http://www.westlaw.com/Find/Default.wl? rs=dfa1.0&vr=2.0&DB=0000506&FindType=Y&SerialNum=1994071193> opinion vacated and superseded, Kahn v. INS, 36 F.3d 1412 (9th Cir. 1994) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000506 &FindType=Y&SerialNum=1994195623> the court of appeals found a long-standing relationship between two unmarried people who lived together to be a significant equity for 212(c) relief.

[FN4] General conditions in an alien's homeland are one of the factors that may be considered by an immigration judge in a § 212(c) application. However, in Matter of D__, 20 I. & N. 915 (B.I.A. 1994) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1994259129> the Board held that if a § 212(c) applicant expresses what amounts to a well-founded fear of persecution, evidence of that fear can only be presented in the context of an asylum or § 243(h) application. (See Ch 13.)

[FN5] See, e.g., Akinyemi v. INS, 969 F.2d 285 (7th Cir. 1992) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000350 &FindType=Y&SerialNum=1992128029> and Palazzola v. INS, 48 F.3d 1219 (6th Cir. 1995) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0000506 &FindType=Y&SerialNum=1995063067> BIA's denial of 212(c) relief reversed and remanded because the BIA failed to take note of the fact that the deportable criminal conduct took place nine years before the alien's deportation hearing.

[FN6] See Immigration Law and Crimes §§ 11:34 et seq. for a thorough discussion of § 212(c) applications and strategy. For strategies for presenting 212(c) applications on behalf of those deportable for drug-related problems, see S. Loue, "Section 212(c) and the Drug User: Using Medical and Epidemiological Evidence to Your Advantage" in Vol.II of AILA's 1995-96 Immigration and Nationality Law Handbook.

[FN7] 8 C.F.R. § 212.3 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=1000547&DocName=8CFRS212.3&FindType=L>.

[FN8] See Matter of Ozkok, 19 I. & N. 546 (B.I.A. 1988) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1988178433> and INA § 101(a)(48)(A). For further discussion, see § 6:8 <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=149027 &DocName=IMLDs6%3A8&FindType=Y>.

[FN9] See Matter of Gordon, 20 I. & N. 52 (B.I.A. 1990) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&DB=0001650 &FindType=Y&SerialNum=1989185682>

[FN10] See Matter of Balderas, 20 I. & N. 389 (B.I.A. 1991) <http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.0&tDB=0001650 &FindType=Y&SerialNum=1991218682>.

Copyright © by National Lawyers Guild

IMLD § 8:41

END OF DOCUMENT

EXHIBIT "G"

Westlaw

307 F.3d 1185                                                          Page 1

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

P
Briefs and Other Related Documents
Chang v. I.N.S.C.A.9 (Wash.),2002.
United States Court of Appeals,Ninth Circuit.
Steve Kie CHANG, Petitioner,
v.
IMMIGRATION & NATURALIZATION
SERVICE, Respondent.
No. 01-35626.

Argued and Submitted April 3, 2002.
Filed Oct. 11, 2002.

Alien who pled guilty to one count of bank fraud for knowingly passing a $605.30 bad check petitioned for writ of habeas corpus after government successfully initiated removal proceedings against him, on theory that loss·resulting from alien's offense exceeded $10,000 and thus provided basis for his removal. The United States District Court for the Western District of Washington, Marsha J. Pechman, J., denied relief, and alien appealed. The Court of Appeals, D.W. Nelson, Circuit Judge, held that: (1) federal bank fraud offense of which alien was convicted, for knowingly cashing counterfeit $605.30 check at grocery store, did not qualify as " aggravated felony" under either a categorical or modified categorical approach, and did not provide basis for alien's removal; and (2) even if it is generally appropriate for Board of Immigration Appeals (BIA) to consider information concerning non-convicted offenses in presentence report (PSR) in deciding whether loss occasioned by alien's offense is more than $10,000, it was improper for BIA to rely on statements in alien's PSR that contradicted explicit language in plea agreement, specifying that alien's offense involved loss of exactly $605.30.

Reversed and remanded.
West Headnotes
[1] Aliens, Immigration, and Citizenship 24◯=
404

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal
        24V(G) Judicial Review or Intervention
            24k396 Standard and Scope of Review
                24k404 k. Law Questions. Most Cited
Cases
    (Formerly 24k54.3(2.1))
Determination by Board of Immigration Appeals (BIA) as to whether alien's federal law conviction is deportable offense is reviewed de novo.

[2] Statutes 361 ◯=219(6.1)

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k219 Executive Construction
                    361k219(6)    Particular    Federal
Statutes        361k219(6.1)    k.    In    General.
Most Cited Cases
    (Formerly 24k54.3(2.1), 361k219(5))

Aliens, Immigration, and Citizenship 24 ◯=404

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal
        24V(G) Judicial Review or Intervention
            24k396 Standard and Scope of Review
                24k404 k. Law Questions. Most Cited
Cases
    (Formerly 24k54.3(2.1), 361k219(5))
Although interpretation of immigration laws by Board of Immigration Appeals (BIA) is entitled to deference, a court need not accept interpretation that is contrary to plain and sensible meaning of statute.

[3] Aliens, Immigration, and Citizenship 24◯=
273

24 Aliens, Immigration, and Citizenship
    24V Denial of Admission and Removal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

307 F.3d 1185
307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

24V(C) Removal or Deportation; Grounds
  24k270 Crime and Related Grounds
    24k273 k. Aggravated Felonies in General. Most Cited Cases
    (Formerly 24k53.2(3))

In deciding whether offense qualifies as "aggravated felony," and thereby provides basis for alien's removal, court looks to statute under which alien was convicted and compares its elements to relevant definition of "aggravated felony" under immigration laws. Immigration and Nationality Act, §§ 101(a)(43), 237(a)(2)(A)(iii), 8 U.S.C.A. §§ 1101(a)(43), 1227(a)(2)(A)(iii).

[4] Aliens, Immigration, and Citizenship 24 273

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(C) Removal or Deportation; Grounds
      24k270 Crime and Related Grounds
        24k273 k. Aggravated Felonies in General. Most Cited Cases
        (Formerly 24k53.2(3))

In deciding whether offense qualifies as "aggravated felony," and thereby provides basis for alien's removal, court's first task is to make categorical comparison, under which offense qualifies as "aggravated felony" if and only if full range of conduct covered by statute of conviction falls within meaning of that term; if statute of conviction is not a categorical match, because it criminalizes conduct that both does and does not qualify as aggravated felony, court then employs a modified categorical approach, under which it conducts limited examination of documents in record of conviction to determine if there is sufficient evidence to conclude that alien was convicted of elements of the generically defined crime, even though statute of conviction was facially overinclusive. Immigration and Nationality Act, §§ 101(a)(43), 237(a)(2)(A)(iii), 8 U.S.C.A. §§ 1101(a)(43), 1227(a)(2)(A)(iii).

[5] Aliens, Immigration, and Citizenship 24 277

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(C) Removal or Deportation; Grounds
      24k270 Crime and Related Grounds
        24k277 k. Fraud, Forgery, and Theft Offenses. Most Cited Cases
        (Formerly 24k53.2(3))

Federal bank fraud offense of which alien was convicted, for knowingly cashing counterfeit $605.30 check at grocery store, did not qualify as "aggravated felony" under either a categorical or modified categorical approach, and did not provide basis for alien's removal, where statute of conviction proscribed any attempt to defraud financial institution, regardless of amount of resulting loss, if any, and where parties specified in plea agreement that alien's offense involved loss of exactly $605.30. Immigration and Nationality Act, §§ 101(a)(43), 237(a)(2)(A)(iii), 8 U.S.C.A. §§ 1101(a)(43), 1227(a)(2)(A)(iii).

[6] Aliens, Immigration, and Citizenship 24 423

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(H) Evidence in Administrative or Judicial Proceedings
      24k423 k. Admissibility. Most Cited Cases
      (Formerly 24k54.1(3))

Aliens, Immigration, and Citizenship 24 429

24 Aliens, Immigration, and Citizenship
  24V Denial of Admission and Removal
    24V(H) Evidence in Administrative or Judicial Proceedings
      24k424 Weight and Sufficiency
        24k429 k. Crimes and Immorality. Most Cited Cases
        (Formerly 24k54.1(5))

Even if it is generally appropriate for the Board of Immigration Appeals (BIA) to consider information concerning non-convicted offenses in presentence report (PSR) in deciding whether loss occasioned by alien's offense is more than $10,000, such that offense qualifies as "aggravated felony" and provides basis for alien's removal, it was improper for BIA to rely on statements in alien's PSR regarding loss occasioned by alien's conduct to extent that statements contradicted explicit language

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

307 F.3d 1185

Page 3

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
**(Cite as: 307 F.3d 1185)**

in plea agreement, specifying that alien's offense involved loss of exactly $605.30. Immigration and Nationality Act, §§ 101(a)(43), 237(a)(2)(A)(iii), 8 U.S.C.A. §§ 1101(a)(43), 1227(a)(2)(A)(iii).

*1187 Frederick P.S. Whang (argued), Whang & Grotz, Seattle, WA, for the petitioner-appellant. Daniel C. Goldman (argued), United States Department of Justice, Washington, DC. Appearances only by John McKay, United States Attorney, Western District of Washington; Christopher L. Pickrell, Assistant United States Attorney, Seattle, WA, for the respondent-appellee.

Appeal from the United States District Court for the Western District of Washington; Marsha J. Pechman, District Judge, Presiding. D.C. No. CV-00-01986-MJP.

Before D.W. NELSON, THOMPSON and PAEZ, Circuit Judges.

## OPINION

D.W. NELSON, Circuit Judge.

Steve Kie Chang pled guilty to one count of bank fraud for passing a bad check. Chang and the government agreed in a written plea agreement that the loss to the victim that resulted from the bank fraud conviction was $605.30. Now the Immigration and Naturalization Service ("INS") argues that it may rely on other evidence in the record to establish that Chang caused a much greater loss to the victim (over $10,000)–a loss that would make Chang removable as an aggravated felon. We reverse and remand to the district court with directions to grant a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

Chang is a native and citizen of South Korea but has lived in the United States as a legal permanent resident since the age of five. In 1998, and at the age of twenty-eight, Chang was served with a federal indictment charging him with fourteen counts of bank fraud, each count corresponding to a bad check that he allegedly passed, and one count

of conspiracy. Chang decided to forgo his right to a trial and instead plead guilty to only one of the fourteen counts of bank fraud.

The deal between Chang and the government was reduced to writing in a plea agreement. The core of the plea agreement is the understanding that Chang would give up his right to a trial and instead plead guilty only to Count Seven of the indictment. Count Seven charged Chang with cashing a $605.30 check that he knew was counterfeit at a Safeway grocery store. The plea agreement emphasized in a separate paragraph the exact loss to the victim for the offense in Count Seven, stating that "[t]he defendant and the United States agree that the offense in Count Seven to which the defendant is pleading guilty involves a loss to the victim of $605.30."

In addition to pleading guilty to Count Seven of the indictment, Chang also agreed to make restitution in excess of the specific loss caused by the check in Count Seven. Paragraph six of the agreement sets forth the stipulation, agreed to by both Chang and the government, that the restitution amount should fall within the *1188 $20,000 to $40,000 range. In exchange for these concessions by Chang, the government voluntarily dismissed the remaining fourteen counts in the indictment.

Chang was eventually sentenced, pursuant to the plea agreement, to eight months in prison. Chang was also ordered to pay restitution (again, in accord with the terms of the plea agreement) in the amount of $32,628.67. This amount included numerous other alleged fraudulent transactions to which Chang did not plead guilty, but for which he did agree to make restitution, in the plea agreement.

The INS, as a result of Chang's conviction in federal district court, initiated removal proceedings against him by serving him with a notice to appear in December of 1999. The INS alleged that he was removable from the United States on the basis of 8 U.S.C. § 1227(a)(2)(A)(iii)(aggravated felony conviction). The particular aggravated felony that the INS claimed Chang committed was "an offense that-involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

307 F.3d 1185

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

1101(a)(43)(M)(i). Following a hearing before an immigration judge ("IJ"), the IJ agreed with the INS's position and ordered Chang removed to South Korea.

On administrative appeal, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision that Chang was removable under § 1101(a)(43)(M). The BIA looked to the plea agreement, criminal judgment, and presentence report ("PSR") to conclude that Chang's conduct related directly to victim losses in excess of $10,000. The BIA therefore concluded on the basis of these " conviction records" that Chang's bank fraud conviction involved a fraudulent scheme that resulted in a loss greater than $10,000 and qualified as an aggravated felony.

Chang appealed the BIA's ruling to this Court, but we subsequently granted the government's motion to dismiss the appeal.

Chang then sought habeas review of his removal order in federal district court, claiming that his removal violated the laws of the United States-in particular, the $10,000 loss requirement of § 1101(a)(43)(M)(i).[FN1] The district court disagreed. The court held that resort to the plea agreement and PSR was proper and that both documents provided reliable support for the BIA's conclusion that the total loss was above the $10,000 threshold.

FN1. The fact that Chang initially appealed the BIA's decision to this Court, and then sought habeas relief when we dismissed the appeal, does not present a jurisdictional issue because Chang's claim is cognizable on habeas as well as on direct appeal. *See Cruz-Aguilera v. INS*, 245 F.3d 1070, 1073 (9th Cir.2001); *Flores-Miramontes v. INS*, 212 F.3d 1133, 1138-40 & nn. 7, 9 (holding that IIRIRA did not change the scope of habeas review under 28 U.S.C. § 2241 and that pre-IIRIRA claims challenging the legality of INS detention were cognizable both on direct review and on habeas).

## STANDARD OF REVIEW

[1][2] "The question of whether a conviction under federal law is a deportable offense is reviewed de novo." *Albillo-Figueroa v. INS*, 221 F.3d 1070, 1072 (9th Cir.2000). While the BIA's interpretation of immigration laws is entitled to deference, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999), we are not obligated to accept an interpretation that is contrary to the plain and sensible meaning of the statute. *See Beltran-Tirado v. INS*, 213 F.3d 1179, 1185 (9th Cir.2000).

## DISCUSSION

Section 1227(a)(2)(A)(iii) states that an alien may be removed from the United States if he or she has been convicted of an *1189 aggravated felony. The INS contends that Chang is properly removable under that statutory section on the basis of his bank fraud conviction. We find the INS's rationale wanting.

[3][4] In deciding whether an offense qualifies as an aggravated felony, we look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Our first task is to make a categorical comparison. Under this "categorical approach," an offense qualifies as an aggravated felony "if and only if the 'full range of conduct' covered by [the criminal statute] falls within the meaning of that term." *United States v. Baron-Medina*, 187 F.3d 1144, 1146(9th Cir.1999) (citation omitted). If we find that the statute of conviction is not a categorical match because it criminalizes both conduct that 'does and does not qualify as an aggravated felony, then we proceed to a "modified categorical approach." *See Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir.2000). Under the modified categorical approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

307 F.3d 1185

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
**(Cite as: 307 F.3d 1185)**

crime even though his or her statute of conviction was facially overinclusive. See *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir.2002) (en banc).

### A. The categorical inquiry

[5] The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000.

When compared with the above definition of an aggravated felony, Chang's statute of conviction is too broad to be a categorical match. Chang was convicted under the federal bank fraud statute, which provides as follows:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Chang's statute of conviction and the first element of § 1101(a)(43)(M)(i)'s definition are plainly coextensive; § 1344 clearly requires proof of fraud (or an attempt to defraud) just as the aggravated felony definition does. However, the statute of conviction is significantly broader than the second element of the aggravated felony definition. While § 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, § 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by § 1101(a)(43)(M)(i), Chang's

conviction is not an aggravated felony on its face.

### B. The modified categorical inquiry

Under the modified categorical approach we are permitted to look to certain documents in the record of conviction to determine*1190 whether Chang's bank fraud conviction satisfies the $10,000 loss requirement of § 1101(a)(43)(M)(i). In its decision, the BIA decided that it could look to Chang's plea agreement and PSR in calculating the loss-to-the-victim. The BIA then concluded that Chang's bank fraud conviction satisfied the requisite loss to the victim amount based on his agreement to make restitution in excess of $10,000 and a statement in the PSR indicating that the "amount of loss attributable to Steven Chang" was over $30,000. We hold-contrary to the BIA-that under the modified categorical approach, the plea agreement firmly establishes that Chang's conviction caused a loss to the victim well below the statutory threshold; we also conclude that the BIA erred when it relied on Chang's PSR to establish a different loss to the victim amount.

### 1. The plea agreement

The written plea agreement between Chang and the government prevents the INS from treating Chang's bank fraud conviction as an aggravated felony. The INS must take the plea agreement as the agency finds it, and in this case, paragraph 8b of that agreement explicitly states that "[t]he defendant and the United States agree that the offense in Count 7 to which the defendant is pleading guilty involves a loss to the victim of $605:30." The text of the plea agreement remarkably tracks Congress's choice of words in § 1101(a)(43)(M)(i) and definitively establishes that the only offense of which Chang was convicted falls about $9,400 shy of qualifying as an aggravated felony.

The INS, however, attempts to avoid the force of paragraph 8b by pointing to Chang's agreement to make restitution in excess of $10,000. We think that this argument misconceives the agreement struck by Chang and the government and disregards

307 F.3d 1185

Page 6

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

the fact that he was convicted of a single count of bank robbery fraud relating to a specific victim,FN2 Section 1227(a)(2)(A)(iii) provides for the removal of aliens only if they have been convicted of an aggravated felony, and here, the plea agreement makes clear (1) that Chang has only been convicted of Count Seven, and (2) that regardless of any other provisions in the plea agreement, the loss to the victim from the only count to which Chang pled guilty was $605.30.

FN2. The term "conviction" is defined in 8 U.S.C. § 1101(a)(48)(A):

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Here the district court entered a formal judgment of guilt on Count Seven and dismissed the remaining counts upon entry of Chang's guilty plea. Thus, the alternative definition of conviction in § 1101(a)(48)(A) does not apply to Chang's case.

To adopt the government's approach would divorce the $10,000 loss requirement from the conviction requirement, see 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that an alien is deportable "who is convicted of an aggravated felony" (emphasis added)), because relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury, in order to be used to impose a restitution order or enhanced sentence. See U.S.S.G. § 1B1.3 (defining relevant conduct). Cf. Chowdhury v. INS, 249 F.3d 970 (9th Cir.2001) (holding that even though a criminal scheme may have involved a loss to the victim in excess of $10,000, to establish that the alien was an

aggravated felon as a *1191 result of his money laundering conviction, the INS must establish that the predicate conviction met the standard for an aggravated felon).

The fact that the loss-to-the-victim amount for Chang's conviction is separately and clearly stated in the plea agreement is what makes this case different from a case recently decided by the Tenth Circuit. See Khalayleh v. INS, 287 F.3d 978 (10th Cir.2002). In Khalayleh, the petitioner pled guilty to Count Two of an indictment alleging four instances of check fraud in violation of 18 U.S.C. § 1344. Id. at 979. Count Two charged Khalayleh with passing a bad check in the amount of $9,308. Id. Khalayleh argued that the INS could not consider any losses that may have resulted from the other counts of the indictment in arriving at the loss to the victim for purposes of § 1101(a)(43)(M)(i). Id. The Tenth Circuit disagreed. The court held that Count Two did not allege a discrete fraud, but rather alleged a scheme to defraud that encompassed a number of checks. Id. at 980. The court therefore held that the loss to be measured from the convicted offense (Count Two) was therefore the loss from the entire scheme. Id.

Here, although the indictment can be read to allege a scheme as well, the plea agreement narrows the scope of the indictment-in particular, the relevant loss to the victim. In contrast to the court in Khalayleh, we need not go looking for the loss to the victim that resulted from Chang's conviction because the plea agreement spells it out for us in black and white. $605.30. Thus, although the plea agreement gave the district court authority to order restitution with respect to all the checks Chang wrote, it also specifically provided the amount to be considered when determining the amount of loss for purposes of the aggravated felony definition.

2. *The presentence report*

[6] The BIA also concluded that it could look to Chang's PSR in establishing the loss to the victim for § 1101(a)(43)(M)(i)'s purposes. Even assuming it were clear under our cases that resort to a PSR may be warranted when conducting a modified

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

307 F.3d 1185

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

categorical inquiry, we still believe that resort to the PSR in this case was not appropriate.

We first note that there is noticeable tension in our recent caselaw concerning whether the INS may ever rely on presentence reports to develop the factual basis of a convicted offense. On the one hand, we recently stated in an en banc opinion that "a presentence report reciting the facts of the crime is insufficient evidence to establish that the defendant pled guilty to the elements of the generic definition of a crime when the statute of conviction is broader than the generic definition." *Corona-Sanchez,* 291 F.3d at 1212(citations omitted). On the other hand, a panel decision issued just four days after *Corona-Sanchez* concluded that resort to a PSR was appropriate to determine whether convictions for bribery and subscribing to a false tax return satisfied the $10,000 loss requirement of § 1101(a)(43)(M)(i). *Abreu-Reyes v. INS,* 292 F.3d 1029, 1034 (9th Cir.2002) ("[A]dmitting the evidence of the amount of loss to the victim contained in the presentence report was not fundamentally unfair, and the IJ properly relied on the pre-sentence report to determine Abreu-Reyes's removability."). We find, though, that we need not resolve this tension here, for no case of ours has held that reliance on a PSR, in the circumstances that the BIA has countenanced here, is permissible.

Even if we believed it generally appropriate to satisfy the elements of an aggravated felony definition with information concerning non-convicted offenses in a PSR, it would still be improper to rely on *1192 statements in Chang's PSR that contradict the explicit language in his plea agreement. *Abreu-Reyes* concluded that the INS may rely on a PSR to determine the loss to the victim when other evidence in the record, i.e., the judgment of conviction, does not provide a loss figure. *Id.* at 1030-31. Here, the plea agreement does clearly provide a loss-to-the-victim amount. Allowing an IJ or the INS to rely on statements or facts in a PSR that relate to dismissed counts to trump the loss amount agreed to by both an alien defendant and the government in a plea agreement would surely lead to sandbagging of many non-citizen criminal defendants.FN3 In light of the explicit terms of the plea agreement regarding the

amount of loss to the victim of Count Seven we conclude that the BIA incorrectly relied on information dealing with unconvicted offenses in Chang's PSR to establish that his bank fraud conviction satisfied the elements of § 1101(a)(43)(M)(i)'s aggravated felony definition.

FN3. Unwitting alien defendants might choose to plead guilty to only a minor charge (one that clearly wouldn't count as an aggravated felony) in a multiple count indictment. However, if statements in a PSR may be used without limitation to establish the elements of an aggravated felony conviction, the INS could later rely on information relating to a more serious charge and effect the defendant's removal even though the defendant would have thought justifiably that his agreement with the government to plead guilty to only a minor charge foreclosed any such efforts by the INS.

CONCLUSION

Chang's removal was ordered in violation of federal law. Chang is not an aggravated felon because he has not been convicted of an offense that resulted in a loss to the victim of more than $10,000. The judgment of the district court is reversed and we remand with directions to grant the writ.

REVERSED and REMANDED.

C.A.9 (Wash.),2002.
Chang v. I.N.S.
307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947

Briefs and Other Related Documents (Back to top)

• 2001 WL 34091547 (Appellate Brief) Brief for I.N.S. (Dec. 11, 2001) Original Image of this Document with Appendix (PDF)
• 2001 WL 34091163 (Appellate Brief) Brief of Appellant (Nov. 05, 2001) Original Image of this Document (PDF)
• 01-35626 (Docket) (Jul. 09, 2001)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 8

307 F.3d 1185

307 F.3d 1185, 02 Cal. Daily Op. Serv. 10,345, 2002 Daily Journal D.A.R. 11,947
(Cite as: 307 F.3d 1185)

• 2001 WL 34091418 (Appellate Brief) Brief of
Appellant (Supplement) (2001) Original Image of
this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

353 F.3d 225
353 F.3d 225
(Cite as: 353 F.3d 225)

Page 1

A

<u>Briefs and Other Related Documents</u>

United States Court of Appeals,Third Circuit.
Aubrey Malcolm MUNROE, Appellant
v.
John ASHCROFT, as Attorney General of the United States; James Zigler, as Commissioner of the Immigration &
Naturalization Service; Andrea J. Quarantillo, District Director of the Immigration & Naturalization Service;
Lorelei Valverde, Acting Assistant District Director-Detention and Removal.
No. 03-1471.

Argued Sept. 15, 2003.
Filed Dec. 16, 2003.

**Background:** Alien appealed from an order of the United States District Court for the Eastern District of Pennsylvania,
Mary A. McLaughlin, J., <u>2003 WL 21048961,</u> denying his petition for a writ of habeas corpus challenging a decision
of the Board of Immigration Appeals (BIA) that he was deportable as an aggravated felon due to his conviction in state
court in New Jersey for a fraud offense.

**Holding:** The Court of Appeals, <u>Alito,</u> Circuit Judge, held that: amount of loss, not the amount of restitution, controlled
in determining whether alien's state court conviction for fraud offense was an aggravated felony for removal purposes.

Affirmed.

West Headnotes

Aliens, Immigration, and Citizenship 24 ⟨⟩277

24 Aliens, Immigration, and Citizenship
 24V Denial of Admission and Removal
  <u>24V(C)</u> Removal or Deportation; Grounds
   <u>24V270</u> Crime and Related Grounds
    <u>24k277</u> k. Fraud, Forgery, and Theft Offenses. <u>Most Cited Cases</u>
     (Formerly 24k53.2(3))
Amount of loss, not the amount of restitution, controlled in determining whether alien's state court conviction for fraud
offense was an aggravated felony for removal purposes. Immigration and Nationality Act, §§ 101(a)(43)(M)(i),
237(a)(2)(A)(iii), <u>8 U.S.C.A. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii).</u>

**\*226** <u>Peter E. Torres</u> (argued), New York, NY, for Appellant
<u>Patrick L. Meehan, Laurie Magid,</u> Virginia A. Gibson, Susan R. Becker (argued), Philadelphia, PA for Appellees.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

353 F.3d 225
353 F.3d 225
(Cite as: 353 F.3d 225)

Page 2

Before ALITO, AMBRO and CHERTOFF, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge.

This is an appeal from the District Court's order denying Aubrey Malcolm Munroe's petition for a writ of habeas corpus. Munroe's petition challenged a decision of the Board of Immigration Appeals that he is deportable as an aggravated felon due to his conviction in state court in New Jersey for a fraud offense. In order to qualify as an aggravated felony, this offense had to involve a loss to a victim or victims that exceeded $10,000. Munroe argues that the New Jersey conviction does not qualify because the sentencing judge eventually reduced the amount of restitution that he was required to pay from $11,522 to $9,999. Because the critical fact for present purposes is the amount of loss, not the amount of restitution, we affirm.

### I.

Munroe, a citizen and native of Guyana, was admitted to the United States as a lawful permanent resident in 1980. In 1995, Munroe was charged in two indictments returned in the Superior Court, Hudson County, New Jersey. The first indictment (No. 1228-07-95) charged Munroe with one count of theft by deception, in violation of N.J.S.A. 2C20-4, and alleged that Munroe had unlawfully obtained $1,000 from the First Fidelity Bank in Union City, New Jersey, in August 1994, by depositing bad checks and then withdrawing $1,000 from his account. The second indictment (2227-12-95) charged Munroe with two additional counts of violating the same statute. One count alleged that Munroe had unlawfully obtained $10,500 from the Bank of New York in Union City, and the other count alleged that Munroe had unlawfully obtained $1270 from that bank. In August 1999, Munroe pled guilty in the Superior Court, Hudson County, New Jersey, to two counts of violating N.J.S.A. 2C20-4. He was sentenced to two concurrent terms of five years' probation and was ordered to pay restitution in the amount of $1,022 on the first indictment and $10,500 on the second.

Following this conviction, the Immigration and Naturalization Service issued a Notice to Appear in Removal Proceedings, charging that Munroe was subject to removal on the ground that he had been convicted of two crimes that involved moral turpitude and that did not arise from a single scheme of misconduct. The Notice was later amended to include the charge that Munroe was removable as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction for a crime involving fraud or deceit in which the loss to the victim exceeded $10,000. See 8 U.S.C § 1101(a)(43)(M)(i).

An Immigration Judge ordered Munroe removed to Guyana, holding that he had been convicted of two crimes of moral turpitude and that the conviction under the Bank of New York indictment met the statutory definition of an aggravated felony. The BIA affirmed.

In the meantime, Munroe and the Hudson County Prosecutor's Office jointly moved the Superior Court to reduce the total amount of restitution required to $9,999, and this motion was granted. It is apparent from the motion and is not disputed here that the motion was not based *227 on a redetermination of the amount of loss caused by the crimes but was intended to alter the effect of the conviction for immigration purposes.

Munroe moved for reconsideration by the BIA, but the Board refused. The Board stated that Munroe had pled guilty to a fraud offense involving a loss of more than $10,000 and that it was therefore "irrelevant that [Munroe's] ordered restitution was later reduced." Munroe then filed a petition for a writ of habeas corpus, but the District Court agreed with the Board's reasoning, and this appeal followed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

53 F.3d 225
53 F.3d 225
**Cite as: 353 F.3d 225)**

## II.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" is now defined by statute to include "an offense that ... involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). There is no dispute in the present case that Munroe's conviction under the Bank of New York indictment for fraud by deception was for an offense involving "fraud or deceit," and therefore that conviction qualifies as an aggravated felony conviction if the amount of "loss to the victim" exceeded $10,000.

We agree with the BIA and the District Court that the amount of loss involved in that conviction was greater than $10,000. The indictment alleged that the loss exceeded this amount, and Munroe does not claim that, when he pled guilty, he admitted to only a lesser loss. Nor is there any suggestion that the Superior Court ever found that the amount of the loss was less than $10,000. As noted, the Superior Court initially required Munroe to pay more than $10,000 in restitution, and it is abundantly clear that the Court later reduced the restitution to $9,999 for the purpose of altering the consequences of the conviction for immigration law purposes, not because of a recalculation of the amount of the loss. Accordingly, the reduction in the amount of restitution was, as the BIA held, "irrelevant" for present purposes.

The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or the indictment is unclear as to the loss suffered. But when the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling.

Munroe argues that, in determining the amount of the loss involved in his state-court conviction, we are bound by the terms of the state-court judgment and that the reduction in the amount of restitution changed the terms of that judgment. What we have said already, however, is sufficient to dispose of this argument. Even assuming for the sake of argument that an immigration judge or the BIA is bound by the terms of a state-court judgment that has been altered for the sole purpose of alleviating the immigration law consequences of the conviction, that rule would not help Munroe. Here, as noted, the amendment of the judgment simply changed the amount of restitution; it did not involve a state-court finding as to the amount of loss.

Moreover, although we need not reach the question, we note that there is authority for the proposition that "[w]hen a court vacates an otherwise final and valid conviction on equitable grounds merely to avoid the immigration-law consequences of the conviction, it usurps Congress's plenary *228 power to set the terms and conditions of American citizenship and the executive's discretion to administer the immigration laws." *Renteria-Gonzalez v. INS,* 322 F.3d 804, 812 (5th Cir.2003) (citation omitted).

## III.

For the reasons set out above, the District Court's denial of Munroe's petition for writ of habeas corpus relief is affirmed.

C.A.3 (Pa.),2003.
Munroe v. Ashcroft
353 F.3d 225

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 4

353 F.3d 225
353 F.3d 225
(Cite as: 353 F.3d 225)

• 03-1471 (Docket) (Feb. 20, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT "H"

Department of Justice
Immigration and Naturalization Service

OMB No. 1115-0009

# Application for Naturalization

Print clearly or type your answers using CAPITAL letters. Failure to print clearly may delay your application. Use black or blue ink.

Write your INS "A"- number here:

A 0 2 9 5 1 2 9 1 8

## FOR INS USE ONLY

| Bar Code | Date Stamp |
|---|---|
| | |
| | Remarks |

| Action | |
|---|---|

Your current legal name.

Family Name (Last Name)
...ica

Given Name (First Name) | Full Middle Name (If applicable)
| n/a

Your name exactly as it appears on your Permanent Resident Card.

Family Name (Last Name)
...ica

Given Name (First Name) | Full Middle Name (If applicable)
...o | n/a

If you have ever used other names, provide them below.

Family Name (Last Name) | Given Name (First Name) | Middle Name

Name change (optional)

...e read the Instructions before you decide whether to change your name.

Would you like to legally change your name? [ ] Yes  [✓] No

If "Yes," print the new name you would like to use. Do not use initials or abbreviations when writing your new name.

Family Name (Last Name)

Given Name (First Name) | Full Middle Name

...at least 18 years old AND

[✓] I have been a Lawful Permanent Resident of the United States for at least 5 years.

[ ] I have been a Lawful Permanent Resident of the United States for at least 3 years, AND I have been married to and living with the same U.S. citizen for the last 3 years, AND my spouse has been a U.S. citizen for the last 3 years.

[ ] I am applying on the basis of qualifying military service.

[ ] Other (Please explain)

Form N-400 (Rev. 07/23/02)N

## Part 2. Information About You

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

A. Social Security Number  0 8 2 - 7 4 - 8 3 4 8

B. Date of Birth (Month/Day/Year)  1 0 / 1 2 / 1 9 5 7

C. Date You Became a Permanent Resident (Month/Day/Year)  1 1 / 0 9 / 1 9 8 8

Country of Birth  Yugoslavia

E. Country of Nationality  Yugoslavia

Are either of your parents U.S. citizens? (if yes, see Instructions)  ☐ Yes  ☑ No

What is your current marital status?  ☐ Single, Never Married  ☐ Married  ☑ Divorced  ☐ Widowed

☐ Marriage Annulled or Other (Explain)

Are you requesting a waiver of the English and/or U.S. History and Government requirements based on a disability or impairment and attaching a Form N-648 with your application?  ☐ Yes  ☑ No

Are you requesting an accommodation to the naturalization process because of a disability or impairment? (See Instructions for some examples of accommodations.)  ☐ Yes  ☑ No

If you answered "Yes", check the box below that applies:

☐ I am deaf or hearing impaired and need a sign language interpreter who uses the following language: _____

☐ I use a wheelchair.

☐ I am blind or sight impaired.

☐ I will need another type of accommodation. Please explain: _____

## Part 3. Addresses and Telephone Numbers

Home Address - Street Number and Name (Do NOT write a P.O. Box in this space)  10 Malcolm X Blvd   Apartment Number 705

County  Bronx   State  New York   ZIP Code  10029   Country  USA

Care of  cobenko & Associates

Mailing Address - Street Number and Name (If different from home address)  25-84 Steinway Street   Apartment Number

City  New York   State  New York   ZIP Code  111.03   Country  USA

Daytime Phone Number (If any)  ( 718 ) 721-2000   Evening Phone Number (If any)  ( 718 ) 721-2000   E-mail Address (If any)

Victoria

Form N-400 (Rev. 07/23/02)N  Page 2

Write your INS "A"-number here:
A 0 2 5 1 2 9 1 8

...e categories below are those required by the FBI. See instructions for more information.

**B. Height**   6   Feet   2.0   inches

**C. Weight**   215.0   Pounds

...er   ☐ Female

...you Hispanic or Latino?   ☐ Yes   ☑ No

*(Select one or more.)*

☐ White   ☐ Asian   ☐ Black or African American   ☐ American Indian or Alaskan Native   ☐ Native Hawaiian or Other Pacific Islander

...color   ☐ Brown   ☐ Blonde   ☐ Gray   ☐ White   ☐ Red   ☐ Sandy   ☐ Black   ☐ Bald (No Hair)

...color   ☐ Brown   ☐ Blue   ☐ Green   ☐ Hazel   ☐ Gray   ☐ Black   ☐ Pink   ☐ Maroon   ☐ Other

...e have you lived during the last 5 years? Begin with where you live now and then list every place you lived for the last 5 years. ...l need more space, use a separate sheet of paper.

| Street Number and Name, Apartment Number, City, State, Zip Code and Country | Dates (Month/Year) | |
| --- | --- | --- |
| | From | To |
| Current Home Address – Same as Part 4.A | | |
| ...Columbus Ave, N.Y., N.Y. 10024 | 09/2001 | Present |
| | 04/1999 | 09/2001 |
| | / | / |
| | / | / |

...e have you worked (or, if you were a student, what schools did you attend) during the last 5 years? Include military service. ...with your current or latest employer and then list every place you have worked or studied for the last 5 years. If you need more ...use a separate sheet of paper.

| Employer or School Name | Employer or School Address (Street, City and State) | Dates (Month/Year) | | Your Occupation |
| --- | --- | --- | --- | --- |
| | | From | To | |
| ...imo ...e | 11-01 43rd Ave, L.I.C., NY, 11101 | 09/2003 | Present | Limo Driver |
| ...national | 27-10 49th Ave, L.I.C., NY, 11101 | 08/2000 | 08/2003 | Limo Driver |
| ...loyed | unemployed | 03/2000 | 07/2000 | unemployed |
| | | / | / | |

Form N-400 (Rev. 01/23/02)N Page 3

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

97 days
3 trips

...many total days did you spend outside of the United States during the past 5 years?

...many trips of 24 hours or more have you taken outside of the United States during the past 5 years?

...below all the trips of 24 hours or more that you have taken outside of the United States since becoming a Lawful ...nent Resident. Begin with your most recent trip. If you need more space, use a separate sheet of paper.

| You Left the United States (Month/Day/Year) | Date You Returned to the United States (Month/Day/Year) | Did Trip Last 6 Months or More? | | Countries to Which You Traveled | Total Days Out of the United States |
|---|---|---|---|---|---|
| 0/2 0 0 2 | 0 1/1 0/2 0 0 3 | Yes | No ✓ | Yugoslavia | 22 |
| 1/2 0 0 3 | 0 9/1 5/2 0 0 3 | Yes | No ✓ | Yugoslavia | 45 |
| 9/2 0 0 4 | 0 8/2 9/2 0 0 4 | Yes | No ✓ | Yugoslavia | 30 |
|  /  /  |  /  /  | Yes | No |  |  |
|  /  /  |  /  /  | Yes | No |  |  |
|  /  /  |  /  /  | Yes | No |  |  |
|  /  /  |  /  /  | Yes | No |  |  |
|  /  /  |  /  /  | Yes | No |  |  |
|  /  /  |  /  /  | Yes | No |  |  |

## Information About Your Marital History

...many times have you been married (including annulled marriages)?  [1]

If you have NEVER been married, go to Part 9.

...u are now married, give the following information about your spouse:

...ouse's Family Name (Last Name)        Given Name (First Name)        Full Middle Name (If applicable)

3. Date of Marriage (Month/Day/Year)     4. Spouse's Social Security Number
/  /

...e of Birth (Month/Day/Year)
/  /

...me Address - Street Number and Name        Apartment Number

State        ZIP Code

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

## Information About Your Marital History (Continued)

spouse a U.S. citizen?  ☐ Yes  ☐ No

r spouse is a U.S. citizen, give the following information:

en did your spouse become a U.S. citizen?

"Other," give the following information:

t your spouse became a U.S. citizen     3. Place your spouse became a U.S. citizen (Please see Instructions)

☐ ☐ / ☐ / ☐     ☐ At Birth    ☐ Other

City and State

r spouse is NOT a U.S. citizen, give the following information :

ouse's Country of Citizenship     2. Spouse's INS "A"- Number (If applicable)

A ☐ ☐ / ☐ / ☐

ouse's Immigration Status

☐ Lawful Permanent Resident    ☐ Other

---

were married before, provide the following information about your prior spouse. If you have more than one previous
age, use a separate sheet of paper to provide the information requested in questions 1-5 below.

ior Spouse's Family Name (Last Name)    Given Name (First Name)    Full Middle Name (If applicable)

tbrock:    Jillian    n/a

ior Spouse's Immigration Status    3. Date of Marriage (Month/Day/Year)    4. Date Marriage Ended (Month/Day/Year)

☐ U.S. Citizen    0 6 / 0 8 / 1 9 9 8    0 2 / 0 4 / 1 9 9 4

☐ Lawful Permanent Resident    5. How Marriage Ended

☐ Other    ☑ Divorce  ☐ Spouse Died  ☐ Other ☐

---

y many times has your current spouse been married (including annulled marriages)? ☐

r spouse has EVER been married before, give the following information about your spouse's prior marriage.
r spouse has more than one previous marriage, use a separate sheet of paper to provide the information requested in questions
5 below.

ior Spouse's Family Name (Last Name)    Given Name (First Name)    Full Middle Name (If applicable)

ior Spouse's Immigration Status    3. Date of Marriage (Month/Day/Year)    4. Date Marriage Ended (Month/Day/Year)

☐ U.S. Citizen    ☐ ☐ / ☐ / ☐    ☐ ☐ / ☐ / ☐

☐ Lawful Permanent Resident    5. How Marriage Ended

☐ Other    ☐ Divorce  ☐ Spouse Died  ☐ Other

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

| 1 |

**Information About Your Children**

…many sons and daughters have you had? For more information on which sons and
…ters you should include and how to complete this section, see the Instructions.

…de the following information about all of your sons and daughters. If you need more space, use a separate sheet of paper.

| Name of Son or Daughter | Date of Birth (Month/Day/Year) | INS "A"- number (if child has one) | Country of Birth | Current Address (Street, City, State & Country) |
|---|---|---|---|---|
| vetozae | 1 1 / 0 1 / 9 8 9 | A n / a | USA | 546 Waite Road, Rexford, N.Y. 12148 |
| | / / | A | | |
| | / / | A | | |
| | / / | A | | |
| | / / | A | | |
| | / / | A | | |
| | / / | A | | |

**Additional Questions**

…answer questions 1 through 14. If you answer "Yes" to any of these questions, include a written explanation with this form. Your
…explanation should (1) explain why your answer was "Yes," and (2) provide any additional information that helps to explain your.

**…eral Questions**

…ve you EVER claimed to be a U.S. citizen *(in writing or any other way)?*                     ☐ Yes  ☑ No

…ve you EVER registered to vote in any Federal, state, or local election in the United States?  ☐ Yes  ☑ No

…ve you EVER voted in any Federal, state, or local election in the United States?               ☐ Yes  ☑ No

…ce becoming a Lawful Permanent Resident, have you EVER failed to file a required Federal,
…ta, or local tax return?                                                                      ☐ Yes  ☑ No

…o you owe any Federal, state, or local taxes that are overdue?                                 ☐ Yes  ☑ No

…o you have any title of nobility in any foreign country?                                       ☑ Yes  ☐ No

…ve you ever been declared legally incompetent or been confined to a mental institution
…thin the last 5 years?                                                                        ☐ Yes  ☑ No

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

# 10. Additional Questions (Continued)

## Affiliations

Have you EVER been a member of or associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place?

☐ Yes  ☑ No

If you answered "Yes," list the name of each group below. If you need more space, attach the names of the other group(s) on a separate sheet of paper.

| Name of Group | Name of Group |
|---|---|
| 6. | |
| 7. | |
| 8. | |
| 9. | |
| 10. | |

Have you EVER been a member of or in any way associated (either directly or indirectly) with:

a. The Communist Party? ☐ Yes ☑ No

b. Any other totalitarian party? ☐ Yes ☑ No

c. A terrorist organization? ☐ Yes ☑ No

Have you EVER advocated (either directly or indirectly) the overthrow of any government by force or violence? ☐ Yes ☑ No

Have you EVER persecuted (either directly or indirectly) any person because of race, religion, national origin, membership in a particular social group, or political opinion? ☐ Yes ☑ No

Between March 23, 1933, and May 8, 1945, did you work for or associate in any way (either directly or indirectly) with:

a. The Nazi government of Germany? ☐ Yes ☑ No

b. Any government in any area (1) occupied by, (2) allied with, or (3) established with the help of the Nazi government of Germany? ☐ Yes ☑ No

c. Any German, Nazi, or S.S. military unit, paramilitary unit, self-defense unit, vigilante unit, citizen unit, police unit, government agency or office, extermination camp, concentration camp, prisoner of war camp, prison, labor camp, or transit camp? ☐ Yes ☑ No

## Continuous Residence

Since becoming a Lawful Permanent Resident of the United States:

Have you EVER called yourself a "nonresident" on a Federal, state, or local tax return? ☐ Yes ☑ No

Have you EVER failed to file a Federal, state, or local tax return because you considered yourself to be a "nonresident"? ☐ Yes ☑ No

Form N-400 (Rev. 07/23/02) N Page 7

Write your INS "A"- number here:
A 0 2 9 5 1 2 9 1 8

## Additional Questions (Continued)

### d Moral Character

purposes of this application, you must answer "Yes" to the following questions, if applicable, even if your records were
or otherwise cleared or if anyone, including a judge, law enforcement officer, or attorney, told you that you no longer have a

Have you EVER committed a crime or offense for which you were NOT arrested?  ☐ Yes ☑ No

Have you EVER been arrested, cited, or detained by any law enforcement officer
(including INS and military officers) for any reason?  ☑ Yes ☐ No

Have you EVER been charged with committing any crime or offense?  ☑ Yes ☐ No

Have you EVER been convicted of a crime or offense?  ☑ Yes ☐ No

Have you EVER been placed in an alternative sentencing or a rehabilitative program
(for example: diversion, deferred prosecution, withheld adjudication, deferred adjudication)?  ☐ Yes ☑ No

Have you EVER received a suspended sentence, been placed on probation, or been paroled?  ☑ Yes ☐ No

Have you EVER been in jail or prison?  ☑ Yes ☐ No

answered "Yes" to any of questions 15 through 21, complete the following table. If you need more space, use a separate sheet
er to give the same information.

| Why were you arrested, cited, detained, or charged? | Date arrested, cited, detained, or charged? (Month/Day/Year) | Where were you arrested, cited, detained or charged? (City, State, Country) | Outcome or disposition of the arrest, citation, detention or charge (No charges filed, charges dismissed, jail, probation, etc.) |
|---|---|---|---|
| k Fraud | 04/26/1990 | N.Y., N.Y., USA | Conviction/incarc./probatio |
| nd Theft Auto | 04/30/1991 | Dade County, Florida, | unknown |
| | | | |

er questions 22 through 33. If you answer "Yes" to any of these questions, attach (1) your written explanation why your answer
Yes," and (2) any additional information or documentation that helps explain your answer.

### Have you EVER:

a. been a habitual drunkard?  ☐ Yes ☑ No

b. been a prostitute, or procured anyone for prostitution?  ☐ Yes ☑ No

c. sold or smuggled controlled substances, illegal drugs or narcotics?  ☐ Yes ☑ No

d. been married to more than one person at the same time?  ☐ Yes ☑ No

e. helped anyone enter or try to enter the United States illegally?  ☐ Yes ☑ No

f. gambled illegally or received income from illegal gambling?  ☐ Yes ☑ No

g. failed to support your dependents or to pay alimony?  ☐ Yes ☑ No

. Have you EVER given false or misleading information to any U.S. government official
while applying for any immigration benefit or to prevent deportation, exclusion, or removal?  ☐ Yes ☑ No

. Have you EVER lied to any U.S. government official to gain entry or admission into the
United States?  ☐ Yes ☑ No

**Additional Questions (Continued)**

Write your INS "A"- number here:

A 0 2 9 5 1 2 9 1 8

**al, Exclusion, and Deportation Proceedings**

removal, exclusion, rescission or deportation proceeding pending against you? ☐ Yes ☑ No

e you EVER been removed, excluded, or deported from the United States? ☐ Yes ☑ No

e you EVER been ordered to be removed, excluded, or deported from the United States? ☐ Yes ☑ No

e you EVER applied for any kind of relief from removal, exclusion, or deportation? ☑ Yes ☐ No

**y Service**

e you EVER served in the U.S. Armed Forces? ☐ Yes ☑ No

e you EVER left the United States to avoid being drafted into the U.S. Armed Forces? ☐ Yes ☑ No

e you EVER applied for any kind of exemption from military service in the U.S. Armed Forces? ☐ Yes ☑ No

e you EVER deserted from the U.S. Armed Forces? ☐ Yes ☑ No

**ive Service Registration**

you a male who lived in the United States at any time between your 18th and 26th birthdays
ty status except as a lawful nonimmigrant? ☐ Yes ☑ No

u answered "NO", go on to question 34.

u answered "YES", provide the information below.

u answered "YES", but you did NOT register with the Selective Service System and are still under 26 years of age, you
t register before you apply for naturalization, so that you can complete the information below.

Date Registered (Month/Day/Year) [ ]     Selective Service Number [ _/_/_ ]

u answered "YES", but you did NOT register with the Selective Service and you are now 26 years old or older, attach a
ement explaining why you did not register.

**Requirements** *(See Part 14 for the text of the oath)*

questions 34 through 39. If you answer "No" to any of these questions, attach (1) your written explanation why the answer was
1 (2) any additional information or documentation that helps to explain your answer.

o you support the Constitution and form of government of the United States? ☑ Yes ☐ No

o you understand the full Oath of Allegiance to the United States? ☑ Yes ☐ No

e you willing to take the full Oath of Allegiance to the United States? ☑ Yes ☐ No

the law requires it, are you willing to bear arms on behalf of the United States? ☑ Yes ☐ No

the law requires it, are you willing to perform noncombatant services in the U.S. Armed Forces? ☑ Yes ☐ No

the law requires it, are you willing to perform work of national importance under civilian
ection? ☑ Yes ☐ No

Write your INS "A"- number here:
A 0 2 9 - 5 1 2 9 1 8

, under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it,
rue and correct. I authorize the release of any information which INS needs to determine my eligibility for naturalization.

ignature                                                                                    Date (Month/Day/Year)

03 | 14 | 2005

under penalty of perjury that I prepared this application at the request of the above person. The answers provided are based
mation of which I have personal knowledge and/or were provided to me by the above named person in response to the *exact*
s contained on this form.

r's Printed Name                                          Preparer's Signature

a/ter Drobenko                                            Walter Drobenko P.C.

onth/Day/Year)      Preparer's Firm or Organization Name (if applicable)      Preparer's Daytime Phone Number

12a| 2005            Drobenko + Associates, P.C.          (718) 721-2000

r's Address - Street Number and Name            City                   State        ZIP Code

- 84 Steinway St                                 Astoria                N Y          11103

## Do Not Complete Parts 13 and 14 Until an INS Officer Instructs You To Do So

(affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this
ion for naturalization subscribed by me, including corrections numbered 1 through _____ and the evidence submitted by me
ed pages 1 through _____ , are true and correct to the best of my knowledge and belief.

                                                              Officer's Printed Name or Stamp          Date (Month/Day/Year)

ced to and sworn to (affirmed) before me

to Signature of Applicant                                     Officer's Signature

application is approved, you will be scheduled for a public oath ceremony at which time you will be required to take the following
allegiance immediately prior to becoming a naturalized citizen. By signing, you acknowledge your willingness and ability to take
:

declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate,
sovereignty, of whom or which which I have heretofore been a subject or citizen;

ill support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic;
ill bear true faith and allegiance to the same;
ill bear arms on behalf of the United States when required by the law;
ill perform noncombatant service in the Armed Forces of the United States when required by the law, and
ill perform work of national importance under civilian direction when required by the law, and
ke this obligation freely, without any mental reservation or purpose of evasion; so help me God.

Name of Applicant                                             Complete Signature of Applicant

Form N-400 (Rev. 07/23/02)N Page 10

EXHIBIT "G"

U.S. Department of Homeland Security/
U.S. Citizenship and Immigration Services
26 Federal Plaza, Room 7-700
New York, NY 10278

**U.S. Citizenship and Immigration Services**

A# 029 512 918

Date: 01/24/2007

Drobenko, Esq. Of Drobenko & Associates, P.C.

teinway Street

, NY 11103

ko Ljutica

PLEASE COME TO THE OFFICE SHOWN BELOW AT THE TIME AND PLACE INDICATED IN CONNECTION WITH AN OFFICIAL MATTER

| | ADDRESS | ROOM NO. 7-700 | FLOOR NO. 7th Floor |
|---|---|---|---|
| ON | 26 Federal Plaza Worth Street Entrance New York, NY 10278 | | |
| D HOUR | DATE Thursday | February 08, 2007 | TIME 10:30AM |
| t | Any District Adjudication Officer | | GS-12 |
| FOR MENT | N336    Appeal on Application | Filed: | |
| TH YOU | All Documents Regarding Application | | |

PORTANT THAT YOU KEEP THIS APPOINTMENT AND BRING THIS LETTER WITH YOU
UNABLE TO DO SO, STATE YOUR REASON, SIGN BELOW AND RETURN THIS LETTER TO THE OFFICE BELOW AT ONCE.

Very Truly Yours,

*Andrea J. Quarantillo*
District Director Services

CC: YOUR _____

BLE TO KEEP THE APPOINTMENT BECAUSE:

| DATE: |
|---|

RE

2WR

EXHIBIT "H"

Citizenship and Immigration Services



26 Federal Plaza
New York, New York 10278

DATE: MAR 0 9 2007

A # 29512918

ijko Ljutica
0 Malcolm X Blvd #705
ew York, NY 10029

**CISION ON REVIEW OF DENIAL OF NATURALIZATION APPLICATION**

record shows a submitted a Request for a Hearing on a Decision Naturalization Proceedings
er Section 336 of the Immigration and Nationality Act on October 16, 2006.

n consideration it is determined that the decision previously entered into your case shall be
eld and your application is denied in that:

e that 8 CFR Section 336.2 (b) states:

"…The reviewing officer shall have the authority and discretion to review
the application for naturalization, to examine the applicant, and either to
affirm the findings and the determination of the original examining officer
or to determine the original decision of the Service in whole or part."

o, 8 CFR Section 316.10(a) states in pertinent part that:

"An applicant for naturalization bears the burden of demonstrating that,
during the statutory period, he or she continues to be a person of good moral
character. This includes the period between the examination and the
administration of the oath of allegiance."

o, 8 CFR Section 316.10 (b)(i) states in pertinent part that:

"An applicant shall be found to lack good moral character. If the applicant
convicted of an aggravated felony as defined in section 101(a)(43)of the Act
on or after 11-29-1990."

ally, INA Section 101 (a) (43)(B) states:

(43) The term "aggravated felony" means…
(M) an offense that
(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00

earing, which began with the prescribed oath, was scheduled for February 8, 2007 to
view the decision to deny your Application for Naturalization.

26 Federal Plaza
New York, New York 10278

...ed on the interview conducted on **February 8, 2007** for a reconsideration of the decision ...our N-400 application for naturalization, a review of your record revealed that you ...e arrested on or about December 21, 1991 for bank fraud. At that time, you and your ...ner spouse, Jillian Nuttbrock, attempt to wire transfer over $470,000.00 from accounts ...aine Webber. On December 17, 1993, you were sentenced to 16 months in prison and 2 ...rs under supervised release. For this crime, you spent over one year in jail.

...applicant lacks of good moral character if he or she was convicted of an aggravated ...ny on or after ...29-1990.  You were convicted on December 17, 1993.

...your appeal hearing, your attorney stated that there has to be a finding of good moral ...racter because you were granted 212(c) relief on April 29, 1996 by an Immigration ...ge.  The granted waiver and the termination of your deportation proceedings only ...vent you from being deported but it does not preclude the Service from taking into ...sideration your crime to establish your good moral character.  Based on the foregoing, ...l are unable to demonstrate that you are a person of good moral character.  You are ...manently bar from citizenship.

...cordingly, after careful review of the record and all relevant statutes, the decision to deny the ...plication for naturalization must remain unchanged.  A review of this decision may sought ...er before a United States District Court pursuant to Section 301 © of the Immigration and ...tionality Act.

...ction 310 © of the Immigration and Nationality Act states:

...person whose application for naturalization under this title is denied, after a hearing an immigration officer under ...ction 336(a), may seek review of such denial before the United Stated District Court for the district in which such ...rson resides in accordance with Chapter 7 of the Title, United States Code.  Such review shall be de novo, and the ...urt shall make its won findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a ...aring de novo on the application.

...ncerely,

...ael I. Quranillo
...strict Director
...tizenship and Immigration Services

c.  Walter Drobenko, esq.
...certified mail –

K