UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

Rajko Ljutica

    Plaintiff,    Electronically Filed

 v.       07 CV. 6129 (JSR)

Alberto R. Gonzales,
U.S. Attorney General
Michael Chertoff,
Secretary, Department of Homeland Security
Eduardo Aguirre
Director, U.S. Citizenship &Immigration Services
Andrea J. Qurantillo
Field Office Director, New York, USCIS

        Defendants.
-------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DROBENKO & ASSOCIATES, P.C.
Walter Drobenko, Esq.
Attorney for the Plaintiff
25-84 Steinway Street
Astoria, New York 11103
(718) 721-2000

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................2

ARGUMENT...................................................................................................................................4

THE COURT SHOULD DENY SUMMARY JUDGMENT TO DEFENDANT BECAUSE LJUTICA;S CONVICTION FOR BANK FRAUD DOES NOT PRECLUDE HIM FROM DEMONSTRATING THE GOOD MORAL CHARACTER NECESSARY TO OBTAIN CITIZENSHIP.

1. The Good Moral Character Requirement..............................................................4

2. Ljutica Can Establish Good Moral Character Because He Has Not Been Convicted Of An Aggravated Felony............................................................................................8

3. Ljutica's Bank Fraud Does Not Qualify As An Aggravated Felony Under § 1101(A)(43)(M)(I)................................................................................................12

CONCLUSION.............................................................................................................................16

## TABLE OF AUTHORITIES
### FEDERAL CASES

Alaka v. Attorney General, 456 F.3d 88...............................................................................15

Asamoah v. INS, 2004 WL 736911,(S.D.N.Y.)....................................................................5

Chan v. Gantner, 464 F.3d 289................................................................................................6

Chang v. INS, 307 F.3d 1185.............................................................................12,13,14,15

Fetamia v. Ridge, 2004 WL 1194458 (N.D. Tex.)............................................................10

Iysheh v. Aschroft, 437 F.3d 613.........................................................................................11

King v. U.S., 296 F.2d 343 (2nd Cir. 1961).........................................................................5

Lee v. U.S., 480 F.2d 673........................................................................................................9

Posusta v. U.S., 285 F.2d 533, 535 (2nd Cir. 1961)...........................................................5

Repouille v. U.S., 165 F.2d 152, 153 (2nd Cir. 1937)......................................................5

Sharma v. Ashcroft, 57 Fed. Appx. 998.............................................................................11

Sui v. INS, 250 F.3d 105..............................................................................................7,8,9,10

### BOARD OF IMMIGRATION APPEALS CASES

Matter of Buscemi, 19 I & N 628 (BIA-1988)....................................................................9

Matter of Marin, 161 I & N 581 (BIA-1978).....................................................................9

Matter of Onyido, 22 I & N Dec. 552, 554 (BIA-1999)..................................................10

**FEDERAL STATUES AND REGULATIONS**

8 C.F.R. § 316.10(a)(2)................................................................................................5

8 U.S.C.§ 1101(a)(43)(M)...........................................................................................8

8 U.S.C.§ 1101(a)(43)(M)(I)..............................................................2,4,7,12,13,14,15

8 U.S.C.§ 1101(a)(43)(U).............................................................................3,4,6,7,8,11

8 U.S.C.§ 1344......................................................................................................2,9,13

8 U.S.C.§ 1427(a)(1)....................................................................................................4

8 U.S.C.§ 1427(a)(2)....................................................................................................4

8 U.S.C.§ 1427(e).........................................................................................................4

Plaintiff, Rajko Ljutica, ("LJUTICA) by his attorney Walter Drobenko, Esq. respectfully submit this memorandum of law in opposition to the Defendants' motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiff LJUTICA, seeks review of the March 9, 2007 final decision of the CIS denying his application to become a naturalized citizen of the United States. The CIS denied LJUTICA's naturalization application after erroneously concluding that he failed to demonstrate that he was able to exhibit good moral character. The CIS based its decision on Plaintiff's 1993 conviction in the United States District Court for the Southern District of New York for bank fraud and erroneously determined that LJUTICA's conviction constituted an "aggravated felony" under 8 USC § 1101(a)(43)(M)(I).

The Court should grant summary judgment to the Plaintiff for the reasons set forth herein. The CIS is precluded from taking into consideration Plaintiff's 1993 conviction because there is nothing in the five years immediately preceding the application that justifies going back more than the five years. Even if the Court considers the 1993 conviction, Plaintiff's conviction is not an aggravated felony. Plaintiff's conviction is not an aggravated felony because under subsection (M)(i) there has to be an actual "loss to the victim" exceeding $10,000.00. In the instant case there is no actual loss to the victim because the Government concedes the fact that the money was returned to Paine Webber, see Plea Transcript Page 13. There is nothing in the plea agreement that specifically states that there was "loss to the victim".

Plaintiff pled guilty to bank fraud under 18 U.S.C. § 1344 and 2. LJUTICA did not plead guilty to attempted bank fraud as alleged in the defendants' memorandum of law in support of its

2

motion for summary judgment. Moreover, contrary to the Government's argument, Plaintiff's conviction does not qualify as an attempt crime under 8 U.S.C. § 1101 (a)(43)(U). Subsection (U) has a two prong test and both elements have to satisfied in order for the attempt statute to apply, to wit: the defendant has to have criminal intent and the defendant has to take a substantial step toward the commission of the crime. In the instant case LJUTICA, the crime was already committed and completed because the money was already wired into Plaintiff's account, consequently, the second prong is not met. The Government erroneously argues that Ljutica stipulated in his plea agreement that he and his co-defendant would have realized $475,025.25 had their scheme been successful. LJUTICA in paragraph 2 of his plea agreement stipulated that "an acceptable method of determining the "loss" figure to be applied to the offense level table of §2F1/1(b) is $475,025.25, . . . ", and such stipulation was only for sentencing purposes. The Government cannot use the above language in the plea agreement, to wit: he and his co-defendant would have realized $475,025.25 had their scheme been successful, in order to change the conviction from bank fraud to attempted bank fraud. Accordingly, LJUTICA's conviction does not constitute an aggravated felony under subsection (M)(i) and subsection (U).

Lastly, the fact that the Immigration Judge granted LJUTICA's request for a discretionary waiver of deportation under 212(c) establishes that LJUTICA did in fact demonstrate that he was an individual of good moral character.

For all of the reasons set forth, the denial of LJUTICA's application for naturalization should be overturned.

3

## ARGUMENT

**THE COURT SHOULD DENY SUMMARY JUDGMENT TO DEFENDANT BECAUSE LJUTICA'S CONVICTION FOR BANK FRAUD DOES NOT PRELCUDE HIM FROM DEMONSTRATING THE GOOD MORAL CHARACTER NECESSARY TO OBTAIN CITIZENSHIP.**

The Court should deny summary judgment to defendants and grant summary judgment for the Plaintiff because there are no genuine issues of fact is dispute.

The Government incorrectly argues that as a matter of law LJUTICA's 1993 conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i) and 1101(a)(43)(U). LJUTICA's conviction does not preclude him from demonstrating good moral character and consequently his naturalization application was improperly denied.

1.  **THE GOOD MORAL CHARACTER REQUIREMENT**

    The statutory period during which good moral character is to be assessed is "five years immediately preceding the date of filing his application up to the time of admission to citizenship". 8 U.S.C. § 1427(a)(1) and (2). Section 1427(e) further provides that "in determining whether the applicant has sustained the burden of establishing good moral character . . . the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, by may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." The implementing regulations provide that conduct prior to the five year statutory period may be taken into consideration "**if** [emphasis added herein] the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or **if** [emphasis added herein] the earlier conduct and acts appear relevant to a determination of the

4

applicant's present moral character." 8 C.F.R. § 316.10(a)(2).

As set forth in the implementing regulations Plaintiff's conduct prior to the five year statutory period <u>may</u> be taken into consideration **"if"** the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period. There is nothing in the record referred to by the CIS or referred to in the Government's motion for summary judgment that points to Plaintiff's conduct during the statutory period that would show that the Plaintiff has not been reformed from an earlier period. In addition, Plaintiff's conduct prior to the five year statutory period may be taken into consideration **"if"** the earlier conduct and acts appear relevant to a determination of the applicant's present moral character. Once again, neither the CIS nor the Government in its motion for summary judgment articulate how the earlier conduct or acts appear relevant to a determination of the application present moral character.

As set forth in <u>Asamoah v. United States Immigration and Naturalization Service</u>, 2004 WL 736911 (S.D.N.Y.) "Determinations of good moral character pursuant to this statutory provision are made on a case by case basis in accordance with the "generally accepted moral conventions current at the time. "<u>Repouille v. U.S.</u>, 165 F. 2d 152, 153 (2nd Cir. 1937), See 8 C.F.R. § 316.10(a)(2) ("the Service shall evaluate claims of good moral character on a case by case basis taking into account . . . the standards of the average citizen in the community of residence.") We do not require perfection in our new citizens.: <u>Klig v. U.S.</u>, 296 F. 2d 343 (2nd Cir. 1961). A person "may have a good moral character though he has been delinquent upon occasion in the past; it is enough if he can show that he does not transgress the accepted canons more often than is usual" <u>Posusta v. United States</u>, 285 F. 2d 533, 535 (2nd Cir. 1961). The

5

statute is not penal; it does not mean to punish for past conduct, but to admit as citizens those who are likely to prove law-abiding and useful." Id. At 535. Circumstances "may change us all." Id at 535." Based upon the attached affidavits submitted in opposition to the Government's motion the Plaintiff has established that circumstances have changed him and that he is an individual that is currently, since 1993, 14 years, has been living a law-abiding and useful life by supporting his two U.S. children, paying his taxes, actively being employed, being trustworthy, supporting his current wife, who is a physician, and by purchasing a cooperative apartment in Manhattan.

The government in support of its motion for summary judgment relies on Chan v. Gantner, 464 F.3d 289, however, the reliance is misguided because the Plaintiff in the Chan case was convicted of conspiracy to alien smuggling which clearly falls in the statue of an aggravated felony and therefore in Chan there was no genuine issue as to the material facts (conspiracies are designated as aggravated felony's in the statute). In the instant case, LJUTICA's conviction does not qualify as an aggravated felon as there is no loss to the victim or victims of $10,000 or more. Moreover, contrary to the Government's argument, Plaintiff's conviction does not qualify as an attempt crime under 8 U.S.C. § 1101 (a)(43)(U). Subsection (U) has a two prong test and both elements have to satisfied in order for the attempt statute to apply, to wit: the defendant has to have criminal intent and the defendant has to take a substantial step toward the committing of the crime. In the instant case LJUTICA committed and completed the crime because the money was already wired to Plaintiff's account, consequently, the second prong is not met.

Next, the Government erroneously argues that the Ljutica stipulated in his plea agreement that he and his co-defendant would have realized $475,025.25 had their scheme been successful.

6

LJUTICA in paragraph 2 of his plea agreement stipulated that "an acceptable method of determining the "loss" figure to be applied to the offense level table of §2F1/1(b) is $475,025.25, . .", and such stipulation was only for sentencing purposes. The Government cannot use the above language in the plea agreement, to wit: he and his co-defendant would have realized $475,025.25 had their scheme been successful, in order to change the conviction from bank fraud to attempted bank fraud. Accordingly, LJUTICA's conviction does not constitute an aggravated felony under subsection (M)(i) and subsection (U).

Also, there was no *intent* on part of Mr. Ljutica to defraud Paine Webber. Demonstrated by AUSA Coffey's statement in the plea agreement, " The government would, among other things, at trial, your Honor, produce the documentary trail that includes the letters of authorization that directed an arm of Paine Webber to transfer approximately $475,000 in an account maintained by Paine Webber into an account that was opened several weeks earlier by Mr. Ljutica and, further, the first attempt failed, it was then attempted again–the first attempt failed, there was an attempt again on Monday. The money was wired into the account". See Transcript of Plea, dated May 26, 1993 as Exhibit "A" attached. p.13 lines 4-12.

Lastly, as also demonstrated by AUSA Coffey Mr. LJUTICA's crime is not an attempt crime. The first attempt to transfer the funds by Nuttbrock failed and the second attempt succeeded and as such the crime was completed. This is a direct challenge to the material facts as stated by AUSA Vassallo in this case and as such the defendants' motion for summary judgement should be dismissed.

In support of the government's motion the defendants site <u>Sui v. INS</u>, 250 F.3d 105 . The instant case is distinguishable from <u>Sui</u> because the Plaintiff's conviction and crime were not an

7

attempt crime. The Plaintiff completed the crime as admitted by by AUSA Choffey, "...the first attempt failed, it was then attempted again–the first attempt failed, there was an attempt again on Monday. The money was wired into the account". See Transcript of Plea, dated May 26, 1993 as **Exhibit "A"** attached to declaration p.13 lines 4-12. It is undisputed and the Government admits that the crime was completed consequently the crime does not fall within subsection (U). Also, as in Sui v. INS, 250 F.3d 105, Mr. Ljutica did not cause a loss to the victim or victims in the amount of $10,000 or more as indicated in 8 USC § 1101(a)(43)(M). Mr. Ljutica's agreement to the "loss" designation was for the sole purpose of establishing sentencing. There was no material loss at all. Sui v. INS, 250 F.3d 105 actually benefits the Plaintiff in this case.

2. **LJUTICA CAN ESTABLISH GOOD MORAL CHARACTER BECAUSE HE HAS NOT BEEN CONVICTED OF AN AGGRAVATED FELONY.**

Plaintiff does dispute the he was convicted of attempted bank fraud. Contrary to the Government's argument, Plaintiff's conviction does not qualify as an attempt crime under 8 U.S.C. § 1101 (a)(43)(U). Subsection (U) has a two prong test and both elements have to satisfied in order for the attempt statute to apply, to wit: the defendant has to have criminal intent and the defendant has to take a substantial step toward the committing of the crime. In the instant case the crime of bank fraud was already committed and completed because the money was already wired to Plaintiff's account[1], consequently, the second prong is not met. Whether a particular conduct constitutes a substantial step toward the commission of a crime is "so dependent on the particular factual context of each case that, of necessity, there can be no litmus

---

[1] The Plaintiff and his former spouse did in fact wire transfer over $470,000.00 from Paine Webber to Plaintiff's account. This fact is undisputed by the Government. Once the money hit Plaintiff's account the crime was completed and therefore, the crime is no longer an attempt crime.

8

test to guide the reviewing courts. Sui v. Immigration and Naturalization 250 F. 3d 105. Consequently, if the Government feels that the Plaintiff's conduct fits under subsection (U), whether a substantial step was undertaken should be allowed to go to the jury. Id. at 119.

The Government is trying to use the language of 18 U.S.C. § 1344 and (2) and subsection (U) to covert Plaintiff's bank fraud conviction to attempted bank fraud by misapplying the word attempt[ing] and misapplying the words "substantial step toward the committing of the crime" to the facts of the underlying crime.

The government incorrectly argues that the plaintiff has failed to meet the burden of establishing good moral character as established in Lee v. USA, 480 F.2d 673. Lee is distinguishable and not applicable to the instant case. In Lee v. USA, 480 F.2d 673, the Plaintiff's wife has filed for divorce prior to the submission of his naturalization petition and there were elements in dispute such as the Immigration Judge found 1) that the Plaintiff had given false testimony, 2) he had committed adultery 3) he was unwilling to take the full oath of allegiance to the United States without qualification or mental reservation.

In the instant case on April 29, 1996, Immigration Judge Matthew Adrian granted Mr. Ljutica lawful permanent residency status ("LPR") based upon the approval of an Immigration and Nationality Act ("INA") 212(c) waiver. A 212(c) waiver is discretionary determination made by the immigration judge. The discretionary elements taken into account are: 1) family ties to the United States; 2) length of residence; 3) hardship; 4) steady employment, property ownership; 5) community service; 6) rehabilitation after criminal convictions; 7) good moral character references. Matter of Marin, 16 I & N 581 (BIA-1978); Matter of Buscemi 19 I & N 628 (BIA-1988). Based upon the immigration judge's evaluation of the above elements as they

9

applied to LJUTICA, the Plaintiff was granted a 212(c). The Plaintiff's good out weighted the criminal conviction. The Immigration Judge, an Administrative Law Judge of the United States Government, found that Mr. Ljutica was able to demonstrate that he did have good moral character.

As stated previously, Mr. Ljutica, through the governments own admission Ms. Nuttbrock did complete the crime of bank fraud on the second attempt. See Transcript of Plea, May 26, 1993 as Exhibit "A" p.13 lines 4-12. Clearly, there was no "attempt" as stated by the defense counsel. AUSA Coffey conceded on the record that the crime did take place on the second attempt. Therefore, any "attempt" element that the defense refers to in Chan or any other case is moot.

To qualify as an "attempt" the offense must include both " criminal intent and the completion of a substantial step toward committing the crime", Sui, 250 F.3d at 115, Fetamia V. Ridge 2004 WL 1194458 (N.D. Tex.). For the same reasons stated above Plaintiff's conviction of bank fraud is not an "attempt" crime. The crime was completed when the second wire transfer hit Plaintiff's account and the money was in Plaintiff's account. There was a substantial step toward committing the crime during the first "attempt" to wire the funds but the second transfer did take place and as such there is no substantial step; *the crime was completed* (emphasis added herein). The Government cites Onyido 22 I & N, Dec. 552, 554 (BIA 1999), for the proposition that actual loss is not required for attempted fraud to constitute aggravated felony under subsection (U). Onyido is distinguishable from the Plaintiff's case because in Onyido involved an unsuccessful effort to commit a crime. In Onyido the record of conviction reflects that the respondent initiated the paperwork necessary to complete the fraud and was arrested after he

10

arrived at the meeting to collect the $15,000. Whereas, Plaintiff in the instant case did in fact complete the fraud because the money was wired into the Plaintiff's bank account and did in fact get deposited into Plaintiff's account. Therefore, the government's contention that the Plaintiff was committed of attempted bank fraud is without merit.

The Government is trying to join the substantial step toward committing a crime with the actual commission of the crime and they are two very separate indicators of a criminal act. Using the governments logic all criminal acts are attempt crimes. The government has clearly overstepped it bounds by reaching to classify Plaintiff's bank fraud as an "attempt" crime.

The defense refers to the intent of the crime. The intent is on the part of Ms. Nuttbrock. She and she only transferred the funds from Paine Webber. Ms. Nuttbrock and AUSA Coffey both acknowledged this. See Transcript of Plea, May 26, 1993 as Exhibit "A" p.12 lines 19-25; p.13 lines 4-12. Mr. Ljutica intended to obtain the funds but did not intend as the government suggest to commit bank fraud.

The government tries to distinguish Iysheh v. Aschroft, 437 F.3d 613, but in that case the court could only take up the issue regarding the conviction of Iysheh which was correctly classified as an aggravated felony. The court found that it was classified correctly but because the plea agreement took into account that Iysheh pleaded guilty to conspiracy. Conspiracy is clearly indicated in subsection (U) of 8 USC § 1101(a)(43). The plea agreement in the instant case does not address the loss to the victim of $10,000 or more. In Sharma v. Ashcroft, 57 Fed. Appx. 998, the government tries to distinguish Sharma but fails because Sharmas' conviction is for bank fraud doesn't fall inline with the facts in the instant case. The Sharmas were convicted of Bank Fraud as an aggravated felony because there was a loss to the victim in the amount of 1.5

11

million dollars and the Sharmas were also convicted of conspiracy. In the instant case the conspiracy charge was dropped.

## LJITUCA'S BANK FRAUD DOES NOT QUALIFY
## AS AN AGGRAVATED FELONY UNDER §1101(A)(43)(M)(i)

The Court in <u>Chang v. Immigration and Naturalization</u> 307 F. 3d 1185, addressed the guidelines and the analysis that has to be made when trying to decide if bank fraud qualifies as an aggravated felony under § 1101(A)(43)(M)(i).

"In deciding whether an offense qualifies as an aggravated felony, we look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). <u>See Taylor v. United States</u>, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Our first task is to make a categorical comparison. Under this "categorical approach," an offense qualifies as an aggravated felony "if and only if the 'full range of conduct' covered by [the criminal statute] falls within the meaning of that term." <u>United States v. Baron-Medina</u>, 187 F.3d 1144, 1146(9th Cir.1999) (citation omitted). If we find that the statute of conviction is not a categorical match because it criminalizes both conduct that does and does not qualify as an aggravated felony, then we proceed to a "modified categorical approach." <u>See Ye v. INS</u>, 214 F.3d 1128, 1133 (9th Cir.2000). Under the modified categorical approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive. <u>See United States v. Corona-Sanchez</u>, 291 F.3d 1201, 1211 (9th Cir.2002) (en banc).

The Court in <u>Chang</u> then went through the categorical inquiry and stated that:

" The INS can only remove Chang if his conviction was for an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). This particular statutory definition of an aggravated felony therefore has two elements: (1) the offense must involve fraud or deceit, and (2) the offense must also have resulted in a loss to the victim or victims of more than $10,000. When compared with the above definition of an aggravated felony, Chang's statute of conviction is too broad to be a categorical match. Chang was convicted under the federal bank fraud statute, which provides as follows:

12

Whoever knowingly executes, or attempts to execute, a scheme or artifice-

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. 18 U.S.C. § 1344. Chang's statute of conviction and the first element of § 1101(a)(43)(M)(i)'s definition are plainly coextensive; § 1344 clearly requires proof of fraud (or an attempt to defraud) just as the aggravated felony definition does. However, the statute of conviction is significantly broader than the second element of the aggravated felony definition. While § 1344 makes it a crime to defraud a financial institution no matter what losses (if any) result, § 1101(a)(43)(M)(i) provides that only a fraudulent offense resulting in more than a $10,000 loss to the victim qualifies as an aggravated felony. Because Chang's statute of conviction therefore proscribes conduct in excess of that covered by § 1101(a)(43)(M)(i), Chang's conviction is not an aggravated felony on its face.

In the instant case, because Plaintiff's statue of conviction proscribes conduct in excess of that covered by § 1101(a)(43)(M)(i), Plaintiff's conviction is not an aggravated felony on its face.

As a result the Court in Chang had to apply the modified categorical inquiry.

The Court in Chang continued the analysis and stated that:

"Under the modified categorical approach we are permitted to look to certain documents in the record of conviction to determine*1190 whether Chang's bank fraud conviction satisfies the $10,000 loss requirement of § 1101(a)(43)(M)(i). In its decision, the BIA decided that it could look to Chang's plea agreement and PSR in calculating the loss-to-the-victim. The BIA then concluded that Chang's bank fraud conviction satisfied the requisite loss to the victim amount based on his agreement to make restitution in excess of $10,000 and a statement in the PSR indicating that the "amount of loss attributable to Steven Chang" was over $30,000. We hold-contrary to the BIA-that under the modified categorical approach, the plea agreement firmly establishes that Chang's conviction caused a loss to the victim well below the statutory threshold; we also conclude that the BIA erred when it relied on Chang's PSR to establish a different loss to the victim amount."

The Court in Chang went on to hold that:

13

"The written plea agreement between Chang and the government prevents the INS from treating Chang's bank fraud conviction as an aggravated felony. The INS must take the plea agreement as the agency finds it, and in this case, paragraph 8b of that agreement explicitly states that "[t]he defendant and the United States agree that the offense in Count 7 to which the defendant is pleading guilty involves a "loss to the victim" of $605.30." The text of the plea agreement remarkably tracks Congress's choice of words in § 1101(a)(43)(M)(i) and definitively establishes that the only offense of which Chang was convicted falls about $9,400 shy of qualifying as an aggravated felony.

In the instant case, in order for a conviction to deemed an aggravated felony there has to be an actual "loss to the victim". Plaintiff's plea agreement does not set forth a "loss to the victim". The Government erroneously argues that the LJUTICA stipulated in his plea agreement that he and his co-defendant would have realized $475,025.25 had their scheme been successful. LJUTICA in paragraph 2 of his plea agreement stipulated that "an acceptable method of determining the "loss" [not "loss to the victim"] figure to be applied to the offense level table of §2F1/1(b) is $475,025.25, . . .", and such stipulation was only for sentencing purposes. The Government cannot use the above language in the plea agreement, to wit: he and his co-defendant would have realized $475,025.25 had their scheme been successful, in order to impute said figure as the "loss to the victim". The Government's argument misconceives the agreement struck by Plaintiff and the government and disregards the fact that he was convicted of a single count of bank fraud where there was no stipulated loss to the victim because there was no loss in fact.

In Chang the plea agreement makes clear (1) that Chang has only been convicted of Count Seven, and (2) that regardless of any other provisions in the plea agreement, the "**loss to the victim**"[emphasis added herein] from the only count to which Chang pled guilty was $605.30. In Plaintiff's plea agreement there is no "loss to the victim" as required by §

14

1101(a)(43)(M)(i). Plaintiff's plea agreement only mentions a "loss" not "loss to the victim" figure to be applied to the offense level table of §2F1/1(b) is $475,025.25.

The Court in Chang held that "To adopt the government's approach would divorce the $10,000 loss requirement from the conviction requirement, because relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury, in order to be used to impose a restitution order or enhanced sentence. See U.S.S.G. § 1B1.3 (defining relevant conduct)" Id at 1190. In Chang the loss-to-the-victim is separately and clearly stated in the plea agreement. In the instant case it is clear that there is no "loss to the victim" separately and clearly stated because there was not loss to the victim because it is undisputed that the money was returned to the Paine Webber, see Transcript of Plea on page 13. The Government is trying to trump the "loss to victim", to wit: $0, by trying to apply the "loss" used for the enhanced sentence. Once again, such an approach is incorrect. The Court in Alaka v. Attorney General 456 F. 3rd 88, held that "allowing the loss calculated for sentencing purposes to supersede the amount designated in the plea agreement "would divorce the $10,000.00 loss requirement from the conviction requirement". In addition, the Court in Alaka went on to hold that "we do not consider the loss charged in the indictment, tabulated for restitution purposes, or calculated for sentencing." Id at 108., also citing Chang. In the instant case, just as in Chang and Alaka, the Court should not consider the loss tabulated for sentencing purposes. Therefore, Plaintiff is not an aggravated felon because he was not convicted of an offense that resulted in a loss to the victim of more than $10,000.00 under subsection (M)(i) and he was not convicted of an attempt crime under subsection (U). Consequently, Plaintiff is not precluded from establishing good moral character.

15

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny defendant's motion for summary judgment in its entirety and grant Plaintiff motion for summary judgment.

Dated: Astoria New York,
       October 1, 2007

Respectfully submitted,

Drobenko & Associates, P.C.

By: _____
    Walter Drobenko, Esq.
    Attorney for Plaintiff
    25-84 Steinway Street
    Astoria, N.Y. 11103
    (718) 721-2000

16

CERTIFICATION OF SERIVCE

I, Walter Drobenko, hereby certify that on October 1, 2007, I caused a copy of the Plaintiff's memorandum of law in opposition to defendant's motion for summary judgment, the declaration of Walter Drobenko with Exhibits and Plaintiffs Rule 56.1 Statement to be served by regular first class mail upon the following individual:

MICHAEL J. GARCIA
United States Attorney for the Southern District of New York
Attorneys for the Defendants
Kristin L. Vassallo
Assistant U.S. Attorney
86 Chambers Street
New York, N.Y. 10007
Tel. No. (212) 637-2822

_____
Walter Drobenko

1